## Jim Jones v. The State.

### No. 3152.  Decided May 16, 1906.

**1.—Murder in First Degree—Husband and Wife—Cross-Examination.**

In this State the wife cannot be required to testify against her husband and her cross-examination must be strictly confined to the examination in chief.

**2.—Same—Case Stated.**

Where upon trial for murder defendant placed his wife upon the stand, who testified that during the husband's absence deceased forced her to have intercourse with him, it was error to permit the State on her cross-examination to show that deceased had been having intercourse with her for a number of years with her consent.  Brooks, Judge, dissenting.

**3.—Same—Manslaughter—Notice of Wife's Conduct.**

Where upon trial for murder the defendant relied on the defense of manslaughter, and introduced his wife as a witness showing one act of illicit intercourse with the deceased and defendant's wife and the communication of such fact to defendant, and his killing deceased on the first meeting thereafter, defendant's knowledge or notice of previous acts of intercourse between said parties could not be proved by his wife.

**4.—Same—Contradicting Witness—Collateral Transactions.**

Upon trial for murder, purely collateral transaction brought out by the State on cross-examination cannot be contradicted in an attempt by the State to impeach the witness; especially where the witness was the wife of defendant.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. E. B. Muse.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Marcus M. Parks,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment fixed at confinement in the penitentiary for life.

The evidence shows that appellant about dusk went to the home of a neighbor, where deceased, Bob Lyles and his wife were stopping; called for deceased, deceased being in the back part of the house. Upon being notified by an inmate of the home who was sitting on the gallery that some one was at the gate and wanted to see him, deceased came to the front steps, and at this juncture was warned by said inmate, whereupon deceased started back in the house, and was shot to death by appellant. The bullets from the gun not only killed deceased but his wife.

Upon the trial appellant's wife was placed on the stand, and she testified that deceased, a short while before the homicide, had approached her sick bed during the absence of her husband and forced her to have carnal knowledge with him. This information, she states, was given by her to appellant. And the other evidence shows that appellant after receiving this information sought out deceased and killed him as above stated.

Appellant's first assignment complains that the court erred in permitting the State to use Mrs. Jones as a witness against defendant and in not confining the State on cross-examination of Mrs. Jones as a witness, to the matter brought out by examination in chief of said witness by defendant. Appellant further insists that it was improper for the State to examine the wife of defendant about matters and things not brought out by defendant. The bill of exceptions presenting this matter is lengthy, covering the larger part of a very voluminous record. As stated, all that was proved by the defense was that deceased, without the consent of Mrs. Jones had raped her. Then the witness was turned over to the State for cross-examination. The record shows that the State was then permitted to prove by Mrs. Jones, that she had previous carnal intercourse with deceased on various occasions; and to lay predicates and subsequently prove by other witnesses, that she had been found at an assignation house in the City of Dallas with deceased; and various matters along this line were brought out by the State on cross-examination of this witness, for the purpose of discrediting her general statement to the effect that she had been raped by deceased. The question here under consideration was passed upon by us in Messer v. State, 43

Texas Crim. Rep., 97, at 107, where the following language was used: "The law does not permit the husband or wife to be witnesses against each other. If a husband is on trial and his wife is a witness, and she should swear to facts injurious to him in answer to questions he propounds he cannot complain. But where she swears to certain facts and circumstances, the cross-examination must be confined to the matters elicited in chief. Of course everything legitimate for the purpose of testing her knowledge of the facts testified to by her, her bias, her prejudice, in fact any matter that legitimately goes to her discredit is admissible on cross-examination." We have carefully read the cross-examination of appellant's wife, and do not think anything was asked or proved that was not in the legitimate scope of a cross-examination of the statement that she made in her examination in chief. This being true, we do not think there was any error in the court admitting the same.

The second assignment complains that the court erred in permitting the isolated acts of adultery on the part of appellant's wife with deceased, covering a period of several years. This we take it, was legitimate cross-examination of her. She had sworn, as stated, that she had been raped by deceased. Certainly if the State could prove by her or from any other source, that she had been habitually having carnal intercourse with deceased, this would show the absolute falsity of her statement that she had been raped by deceased; at least would tend strongly to do so.

Nor do we think that the court erred, as insisted in appellant's third assignment, in permitting the State, after laying proper predicate for impeachment of Mrs. Jones, to prove by J. D. Kurfman that he had seen Mrs. Jones in bed with deceased at an assignation house run by Black Mary. Various other matters are complained of along the line discussed, that we do not deem necessary to review.

Appellant's ninth assignment complains that the court erred in permitting Charley Rainey to testify that he had had a fight with appellant about what Rainey had said to appellant relating to deceased and appellant's wife. The bill shows that appellant denied on cross-examination that he had had a fight about the matter. It certainly was permissible to contradict him about said fight, since the bill shows that the witness Rainey's testimony was to the effect that appellant's wife and deceased had been having improper relations.

We do not think that the court erred in failing to give appellant's special charges, since the same were covered by the main charge of the court so far as applicable. We have carefully examined the charge of the court, and believe the same is correct. There is no error in this record, and the judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

### April 10, 1907.

HENDERSON, JUDGE.—This case was affirmed at a former term of this court, and now comes before us on motion for rehearing. In the original opinion we held that the lower court did not commit any error in holding that the wife of appellant was subject to the cross-examination indulged in by the State. Appellant challenges that opinion and asks for a review of the question, and we have accordingy investigated the matter of the cross-examination of appellant's wife more thoroughly, and will now proceed to discuss the questions involved in her cross-examination.

It appears from the record, bill of exceptions being taken in the statement of facts, as presented by questions and answers, that the wife was cross-examined as to a number of transactions claimed to be independent and not pertinent to her examination in chief. Appellant placed his wife, Mrs. Jones, on the witness stand, and proved by her that she was his wife; that she had been married to him about twenty years; that as the fruit of their marriage they had eight children, four of whom were still living; that she was a niece, by marriage, of the deceased; that deceased lived in the house of witness and appellant during the month of February, 1905; that during said time, on one occasion, she being sick at the time and confined to her bed, during the absence of her husband, deceased came to where she was and asked her to have intercourse with him. She objected, said she was sick; he got in bed with his clothes on and told her she could stand it all right; that she made no effort to resist him except crying; that she was not in a condition to resist him; that he just raped her; that about a week before the killing came off, perhaps a week and a half, on Tuesday morning, she told her husband what deceased had done to her. On this examination in chief, over appellant's objections, the State was permitted, on cross-examination, to prove that deceased had been having intercourse with her for a number of years; that is, the witness was not able to say how many times he had had intercourse with her; that she had known deceased during some seventeen years; that she was living at the John F. Jones place when intercourse between them first started, and that they lived there four years; that they lived on the Lyle farm, that is deceased's farm, several years; that she did not tell her husband of this, and on the habeas corpus trial she stated that she testified that she had never had intercourse with deceased but the one time, of which she informed her husband. The State also proved by her that she had a picture taken of himself and herself. The character of picture is not disclosed, but the intimation is that it was a lewd picture, and that she went with deceased to Dallas and other places with the knowledge of appellant; that there was trouble between deceased and appellant before deceased went off and got married to another woman and before he quit furnishing supplies; that they had a little racket before that

but the witness could not say what the racket was about as deceased and appellant were at the time out in the lot and not in the house; that while she and appellant lived on the Lyle farm there was no fussing on the part of her husband with Lyle about Lyle coming to the house when nobody was there but Lyle and herself; that she came to Dallas with Lyle after he had raped her in February, and after she got to Dallas she went on to Wylie, Texas, and that she did not stop anywhere in Dallas except at the depot waiting for the train to Wylie. In addition she testified that there was posted on her gate at one time by some unknown person a notice reflecting on her character for chastity. She also testified to a number of other facts and circumstances not necessary to be stated, which we do not regard as material.

It is settled by statute in this State that the wife cannot be required to testify against her husband, and in accordance with this rule it has been held in a number of decisions that the wife's cross-examination must be strictly confined to the examination in chief; that is, she can only be interrogated on cross-examination in regard to matters growing out of the examination in chief and germane to such examination. See Washington v. State, 17 Texas Crim. App., 197; Bluman v. State, 33 Texas Crim. Rep., 43; Hoover v. State, 35 Texas Crim. Rep., 345; Jones v. State, 38 Texas Crim. Rep., 87; Gaines v. State, 38 Texas Crim. Rep., 216, and Messer v. State, 43 Texas Crim. Rep., 97. In Jones case, supra, the scope of a cross-examination in such case was discussed and the rule laid down as above stated. Now, the question presented for our consideration is was the cross-examination here strictly germane to the examination in chief. It is contended by the State that the facts elicited by appellant from his wife involved her character for chastity; that she testified that she had been raped by deceased and that she so told her husband, and that it was permissible to prove circumstances; that is, former acts of illicit intercourse which suggested that she could not have been raped, and that such testimony went to her consent. This would certainly be true if deceased was on trial on a charge of rape, but we do not think the same principle is applicable in this character of case where appellant is on trial for having slain deceased on the provocation as conveyed to him by his wife. We are also referred to article 704, Penal Code, which says, "In every case where the defense spoken of in the preceding article is relied on, it shall be competent to prove the general character of the female insulted in order to ascertain the extent of the provocation." This testimony, however, is not evidence of the general character of appellant's wife about which he would be presumed to take knowledge, but it is evidence of specific acts and under the authorities was not admissible. See McCray v. State, 38 Texas Crim. Rep., 613; Richardson v. State, 70 S. W. Rep., 320, and Lankster v. State, 72 S. W. Rep., 388. Of course, if these specific acts were brought home to him they might be admissible, but they were not brought home to him by this witness, and if we were permitted to refer to his own testimony he explicitly denies any knowl-

edge of her carnal intercourse with deceased. The question baldly presented is, the appellant, having proven in his defense to reduce his case to manslaughter one act of so called rape or illicit intercourse between deceased and his wife, and its communication to him by his wife, and his shooting deceased on the first meeting thereafter, was it pertinent or germane to her examination in chief to prove by her on cross-examination a number of other acts of illicit intercourse covering several years? We think not. These other acts mentioned could not affect him from his standpoint, not being shown to have knowledge thereof. Of course, the question would be presented differently if knowledge was brought home to him of such acts of intercourse, but here all that can be said in regard to this is that on account of the frequency and long continuance of these acts the circumstances were such as to bring home to appellant notice of same, but we do not believe the testimony can be admitted on that theory. Other witnesses might testify to such facts if circumstantially their testimony brought home to appellant notice, but the principle here involved is simply: can the wife, on cross-examination, be made to testify to new and original evidence against her husband not pertinent or germane to her examination in chief. As heretofore stated, the authorities are all against this proposition, and we accordingly hold that the court improperly admitted this character of evidence against appellant, and we believe it was calculated to prove hurtful to him. From it the jury might believe that appellant knew of the lewd conduct between his wife and deceased, or should have known of it, and consequently weakened his defense of manslaughter.

During the progress of the trial the State was permitted, over appellant's objections, to lay the predicate with his wife Mrs. Jones as to certain acts indicating lewd conduct committed by her, and to contradict her, as to said acts and course of conduct by other witnesses. For instance, she was asked about staying all night with deceased at the house of one Black Mary, and at the house of Mrs. Watts in Dallas. On her denial as to these accusations, the State introduced witnesses who contradicted her. Appellant excepted to this mode of procedure on the ground not only that his wife was being interrogated about matters on which she was not examined in chief, but that same was collateral, and if on cross-examination the witness could be interrogated in regard to same, that her answers thereto could not be contradicted. It occurs to us that this objection to the testimony of Mrs. Watts and other witnesses upon these transactions, and all other like testimony was well taken. It will be observed that the witness Mrs. Jones had already admitted that she had had numerous acts of carnal intercourse with deceased outside of the act proven by her on behalf of appellant. We have already held that this was illegitimate cross-examination of appellant's wife, but even if such testimony had been legitimate, as in the cross-examination of some other witness, we take it that the transactions were purely collateral and the State would be bound by the answers of the witness and could not contradict her. Evidently this was an at-

tempt to impeach the State's own witness, which is not permissible, and moreover, same being upon collateral matters, the witness could not be impeached in regard thereto. See White's Code of Criminal Procedure, subdivision of section 1109, and authorities there cited. Of course, it might be permissible, under the circumstances of this case, for the State to have shown, as it seems to have done in some instances, acts of lewdness, or suggesting carnal intercourse between appellant's wife and deceased where knowledge thereof was brought home to appellant by either positive or circumstantial evidence, but, as heretofore stated, in the absence of such knowledge on the part of appellant, such independent facts could not be shown by other witnesses; certainly not by the wife of appellant as to matters about which she was not interrogated in chief, much less could she be contradicted in regard thereto. Appellant's wife was an important witness for him, and the introduction of this illegitimate testimony was calculated to affect appellant injuriously in two ways: first, it discredited her with the jury, and secondly, the jury were liable to appropriate the evidence of other witnesses showing specific acts of carnal intercourse as original testimony against appellant, and it would be a matter of difficulty for the court, even in the charge, to limit the effect of this testimony.

There are other errors pointed out which we do not deem necessary to discuss; some of them in connection with the court's charge, which do not appear to have been raised by an exception taken at the time or in motion for a new trial, but which, we take it, are not likely to occur again.

For the errors discussed the motion for rehearing is granted, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, dissents.