## JOHN RICHARDS v. THE STATE.

### No. 3708.   Decided April 29, 1908.

#### 1.—Murder—Evidence—Conspiracy—Acquittal of Co-conspirator.

Where the substantive crime charged is murder or some other distinct offense, and not a charge of the substantive crime of conspiracy, the declarations and admissions of a co-conspirator are admissible in evidence, whether said co-conspirator had been acquitted or convicted, a predicate having been laid and such declarations being otherwise admissible.

#### 2.—Same—Case Stated—Husband and Wife.

Where upon trial for murder, the theory of the State was that the defendant, his wife and another party had entered into a conspiracy to kill the deceased, and there was sufficient testimony on the part of the State to submit this issue under proper instructions to the jury, and that they could not consider the acts or declarations of the co-conspirator made in the absence of the defendant unless such conspiracy had first been established by independent testimony; the fact that the defendant's wife had been jointly indicted with him and the other party for said murder and previously acquitted would not render her declarations to said co-conspirator, in the absence of her husband, inadmissible in the trial of the husband for said murder.

#### 3.—Same—Evidence—Husband and Wife—Cross-Examination—Insulting Conduct to Female Relative.

Where upon trial for murder, the defendant introduced his wife as a witness, who testified to a single act of carnal intercourse between herself and the deceased at a certain time and place and which she claimed was against her will, and that she communicated this matter to her husband about a week before the homicide, and which the defense assigned as the motive of the killing of deceased, it ·was reversible error upon cross-examination to compel the witness to testify to subsequent misconduct, acts of intimacy and acts of sexual intercourse between the witness and deceased.   Following Jones v. State, 51 Texas Crim. Rep., 472, and other cases.

#### 4.—Same—Charge of Court—Character of Deceased.

Where upon trial for murder, there was no evidence of what the character and disposition of deceased were, and little if any evidence of defendant's knowledge of the same, at least within recent years, the court's charge on self-defense, which based the same on defendant's knowledge of the character and disposition of the deceased, and qualified the defendant's right to self-defense by this knowledge, was error.   Following Dickey v. State, 45 Texas Crim. Rep., 297.

#### 5.—Same—Charge of Court—Adequate Cause—Self-Defense.

Where upon trial for murder the defendant relied on present adultery between

his wife and the deceased as justification for the homicide, and also on proof of previous carnal intercourse between these parties to reduce the homicide to manslaughter, and the court's charge possibly confused the same by instructing the jury that if the killing occurred as soon as the fact of illicit intercourse was *discovered* or communicated to the husband, it would be adequate cause, etc., the same was objectionable and misleading in that form.

**6.—Same—Charge of Court.—Adequate Cause.**

Upon trial for murder where previous sexual intercourse was interposed to reduce the homicide to manslaughter, a charge of the court that when adultery is an issue, etc., and though a mistake as to the fact of adultery may *possibly* exist, etc., the same was misleading, too restrictive and placed a greater burden upon defendant than the law authorized.

Appeal from the District Court of Travis. Tried below before the Hon. Geo. Calhoun.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*O. Dickens, J. Bouldin Rector, E. T. Branch* and *Brockman, Kahn & Newman,* for appellant.—Upon question of cross-examination of defendant's wife of other acts of illicit intercourse, counsel cited cases in the opinion. Upon question of admitting in evidence the alleged acts and declarations of defendant's wife and the alleged codefendant: Miers v. State, 6 Texas Crim. App., 1; Sessions v. State, 37 Texas Crim. Rep., 62; Rhodes v. State, 39 Texas Crim. Rep., 332; Menges v. State, 25 Crim. App., 710; Cohea v. State, 11 Texas Crim. App., 153; Munson v. State, 34 Texas Crim. Rep., 498. On question that the conspiracy must have been in furtherance of a common unlawful design: McKenzie v. State, 32 Texas Crim. Rep., 568; Menges v. State, 25 Texas Crim. App., 710; Blain v. State, 33 Texas Crim. App., 236; Cortez v. State, 24 Texas Crim. App., 511; Ripley v. State, 51 Texas Crim. Rep., 126; 100 S. W. Rep., 943; Bowen v. State, 82 S. W. Rep., 520; Graham v. State, 61 S. W. Rep., 714; Spencer v. State, 106 S. W. Rep., 386; Choice v. State, 106 S. W. Rep., 387; Alford v. State, 52 Texas Crim. Rep., 621; 108 S. W. Rep., 364. On question of charge of court on character and disposition of deceased: Hickey v. State, 76 S. W. Rep., 920; Andrews v. State, 76 S. W. Rep., 918; Wallace v. State, 50 Texas Crim. Rep., 374; 97 S. W. Rep., 471; Benson v. State, 51 Texas Crim. Rep., 367; 19 Texas Ct. App., 257. On question of court's charge on adequate cause and self-defense: Price v. State, 18 Texas Crim. App., 474; Massie v. State, 30 Texas Crim. App., 64; Spencer v. State, 106 S. W. Rep., 386; Brittain v. State, 105 S. W. Rep., 817; Stewart v. State, 52 Texas Crim. Rep., 273; 20 Texas Ct. Rep., 597; Redman v. State, 52 Texas Crim. Rep., 591; 108 S. W. Rep., 365; Giles v. State, 67 S. W. Rep., 411.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of testimony of co-conspirators, one being acquitted, etc.: Holt v. State, 39 Texas Crim. Rep., 282.

RAMSEY, JUDGE.—Appellant, on the 15th day of August, 1906, shot and killed W. T. McCall in Austin, Texas. Both appellant and deceased were negro school teachers, appellant living in Matagorda and deceased in Austin. They had known each other quite intimately some years before, and up to within a short time of the killing were shown to have been quite friendly. The motive assigned for the killing by appellant, and the only one having much, if any, support in the evidence, was that something like a week before, appellant's wife, Minnie, had informed him of an assault on her by the deceased while attending a colored normal school in the summer of 1901. Appellant proved a most excellent reputation as an industrious, peaceful and reliable negro, and was, as the record shows, highly respected by his white neighbors, and had lived, as far as the record shows, a blameless and praiseworthy life. The testimony showed that, up to the time it is claimed this outrage upon his wife was communicated to him, he was industrious, contented and prosperous, and a happy negro, but that from about the date and time he received this information his manner of life and appearance had greatly changed. As a result of this communication, it was finally arranged between his wife and himself that they should come together to Austin, and that she should confront McCall, the deceased, with the story of the outrage, and if when she had done so appellant should believe that her story was true, he would receive her back as his wife and expose McCall, but unless so satisfied he would not under any circumstances consent to live with her. The parties came from Houston, and at the request of appellant one Wilson, a negro, came also. All three of them arrived in the City of Austin on the day of the homicide very early in the morning and went to the negro boarding house of one Mary Norris. Appellant, early in the morning, gave notice of his intention to go to San Antonio to consult a physician. Being misinformed as to the time the train left, he missed connection and returned and came up in the City of Austin where he found his wife at a restaurant. The fact of so finding her excited his suspicion, and while he had before that abandoned his intention of going to San Antonio, he, nevertheless, stated to his wife that he was mistaken as to the time of the departure of the train on which he was to take passage, but that a train for San Antonio did leave in a few minutes, and that he intended to go there at once. With this statement he left her and saw her no more until about dusk; that when he found his wife she was in company with McCall in a somewhat secluded place, and, as he claims, in the act of carnal intercourse. That so finding them he struck McCall over the head with a pistol, and McCall showing fight and making a demonstration as if to shoot him, in his own defense he fired and killed McCall. This is a very brief resume of the facts, but with the additional statements hereinafter included, will probably be sufficient to illustrate the holding and opinion of the court. The record in the case is exceedingly voluminous, and we must say, as we believe, unnecessarily so. We shall, as far as practicable, condense the substantial issues, and discuss the more important

ones raised. There are a number of incidental questions of procedure and practice which we deem it unnecessary to discuss, as they are of such a character as will not likely arise on another trial; nor do we deem it necessary to discuss or review the action of the court in overruling appellant's application for a continuance, since the case has to be reversed and this question is not likely to arise again.

1. It was the theory of the State that there was a conspiracy entered into between appellant, his wife and their companion, Wilson, to murder McCall, and a number of circumstances and much evidence were introduced to establish this fact. We cannot say, judging from the entire record, that the fact of conspiracy was conclusively shown. Indeed, we should be inclined, if the matter was submitted to us, to doubt whether the fact of conspiracy was proven, but the facts and circumstances offered in evidence tending to establish such conspiracy were of a character from which the substantial fact of conspiracy might be reasonably and fairly inferable. Under all the proof taken in connection with the charge of the court, we are not prepared to say that it was not sufficient to show a prima facie case of conspiracy and to furnish the basis of the admissions and declarations of appellant's wife and Wilson, to which numerous objections were made. The record shows that over the objection of appellant the State was permitted to prove that W. H. Wilson, in the presence of appellant and his wife, Minnie Richards, at the house of Mary Norris, shortly after their arrival there, spoke of W. T. McCall, and that Minnie Richards stated that she wanted to see him, and that on the morning of the same day W. H. Wilson, one of the codefendants, inquired of Mary Norris about W. T. McCall, W. H. Passon, and other school teachers of the City of Austin, and stated that he had lived in the City of Austin in Elder Massie's time, and that he then asked her the time of day, and she told him it was nine o'clock, and that he then said he must go and wake defendant up, and that he did go and knock on defendant's door and called him. Further proof was made also, over the objection of appellant, that on the morning of the day of the homicide, and after appellant and Wilson had left the house of Mary Norris, that Minnie Richards, in the absence of appellant, came back in the back room where Mary Norris was ironing and pressed a waist, and that while back there she (witness) had a conversation with defendant's wife, in which defendant's wife asked her about W. T. McCall, and about the location of Jennings' drugstore. Proof was also admitted by one J. J. Jennings that on the morning of the homicide appellant's wife went to the drugstore of the witness and asked to be permitted to take a seat, and that she stated she was waiting for a friend, and that in about fifteen minutes after she came to his drugstore, W. H. Wilson, whom the witness stated he had seen standing out in front of his drugstore before Minnie Richards came there, with his back to the drugstore looking at some men who were laying brick, appeared and came in the drugstore, and that Wilson and Minnie Richards held a conversation in a low tone of voice, the words

of which he could not hear, and that appellant's wife then asked witness to direct her to the house of W. H. Passon (who is a colored school teacher of the City of Austin, and who lived near W. T. McCall), and that he tried to get said Passon over the phone, but was unable to do so, and that he then gave her directions about how to find the house of said Passon, and that Minnie Richards and Wilson then left going south across the street from witness' place of business, and then turning west, and that a little later on he saw them again, and at that time they were going eastward in the direction of Passon's and McCall's. It is also shown by the testimony of this same witness, Jennings, that on the morning of the homicide, W. H. Wilson, who is separately indicted in cause No. 15,307, in the same court, as a principal in the killing of W. T. McCall, came to the drugstore of the witness while Minnie Richards was there and in the absence of defendant, and that said Wilson and said Minnie Richards held a conversation in a low tone of voice, the words of which the witness could not hear, and that after such conversation Minnie Richards asked the witness where W. H. Passon lived and that he told her he could get Passon over the phone, and that he tried to do so but did not succeed, and that he then gave her directions about how to find said Passon's house, and that Minnie Richards and said Wilson then left his drugstore and went south across the street and then turned west, and at some little time later he saw them going east along 6th street in the direction of where said Passon lived. The State was also permitted to prove, over the objection of appellant, by one G. G. Bolden, that on the day that W. T. McCall was shot, W. H. Wilson, in the absence of appellant, came to the "Watchman" office, which was a negro newspaper published in the City of Austin, over J. J. Jennings' drugstore on east 6th street, and there inquired of the place of residence of deceased, W. T. McCall, and also that of W. H. Passon, both of whom were negro school teachers in the City of Austin, and that it was sometime in the forenoon of said day. Again, the State was permitted to prove, over the objection of appellant, by Isaac Robinson, that on the day of the homicide and near the hour of noon, he saw W. H. Wilson and Minnie Richards, the codefendant of this defendant and the wife of this defendant, at a point on east 6th street, which he designated as "Cherico's Store," and that Wilson asked him to show appellant's wife where W. T. McCall lived; that he consented to do so, and that he conducted her north one block and then east one-half block to where McCall lived, and just before he had left the place where Wilson had made said request of him, Wilson and Minnie Richards passed some words in a low tone that he, witness, did not hear. Again, the State was permitted to prove, over the objection of appellant, by the witness Saphronia McCall (widow of deceased W. T. McCall), that about noon on the day of the homicide Minnie Richards, the wife of this defendant, came to the home of the witness and W. T. McCall; that she was accompanied by a negro boy; that as she came to the gate she first started to pass by; that the witness and W. T. McCall were

then sitting on their front porch, and that defendant's said wife then spoke to said McCall, who replied to her that she had the advantage of him; that she then told him who she was and he then said that he did not recognize her because she was so much thinner than when he had last seen her; that she and deceased went out to the gate to meet Minnie Richards and that deceased introduced them; that about that time a colored school teacher by the name of Parthenia Polk came up, and that the, witness, told deceased to invite the ladies in the house; that they all then went in; that she, witness, started to set out chairs for Parthenia Polk and Minnie Richards and did set out one, when Parthenia stated that she desired to see the witness privately, and that she and Parthenia thereupon went into the house and into the front room, or sitting room of the house, which room was the easternmost room and extended as much further north than the balance of the house as the width of the gallery, which ran across the front of the balance of the house from a junction with said room; that she took a seat at the window of said room which opened on said front porch. That before going into the house she had heard deceased ask Minnie Richards if she had come to Austin alone, and that Minnie Richards had replied that defendant had come with her but had gone to San Antonio, and that deceased had asked her where she was stopping and she had told him at Mary Norris'. That while seated at the window of said room she continued to notice deceased and Minnie Richards; that Minnie Richards was sitting near to her, and that she heard Minnie Richards tell deceased that she wanted to see him on some particular business, or wanted him to attend to some particular business; the witness did not remember which, but it was one or the other, and asked deceased to go over to Mary Norris' at 6 o'clock that evening for said purpose; that deceased at first hesitated and then said he would, and that after some little further talk between deceased and Minnie Richards, she got up and said she was going, when deceased said to her to see his wife before she went; that deceased and Minnie Richards then came through the screen door and into the hallway and to the door which led into the room where the witness and Parthenia Polk were, and that deceased stated that Mrs. Richards was about to leave, and that the witness asked her if she was going so soon, and to stay until the cool of the day, and that she replied that she would walk slow and it would not be so very warm; that deceased stated to the witness while they were all at said sitting room door that Minnie Richards had asked him to come over to Mary Norris' that evening at 6 o'clock to attend to some business for her, and that he had promised her to go, and that Minnie Richards then started away, and that when she got to about midway between the house and the front gate she turned and asked deceased to be certain and not disappoint her about coming over at 6 o'clock that evening, and that deceased told her he would not, and that defendant's said wife then left. It was also shown by the witness, Carl Hyltin, over the objection of appellant, that on the forenoon of the day of the homicide he saw

Minnie Richards, the wife of appellant, in front of Jennings' drug-store on 6th street, in the City of Austin, and that some negro man was with her, whom witness could not identify. All this testimony was objected to, substantially, on the following grounds: That no con-spiracy had been shown to exist between appellant and W. H. Wilson, outside of the acts and declarations of said Wilson, out of the presence of appellant, and no conspiracy had been shown which could have em-braced the said Minnie Richards; that no conspiracy had been shown which could have embraced said Minnie Richards, said Wilson and appel-lant, and because no such conspiracy was subsequently shown by the State at any time by any sufficient testimony outside of the alleged acts and declarations of the said W. H. Wilson and the said Minnie Richards made and done out of the presence of appellant, and because the said Minnie Richards having been acquitted, her acts and declarations made in his absence, either alone or in connection with the said W. H. Wil-son, could not be admitted against him, she being his wife, and that same was in effect the making of said Minnie Richards a witness for the State against him, and because said acts and declarations of said Wilson were out of his presence, and were as to him hearsay and *inter alias acta,* and the acts and declarations of a third person by which he could not be bound. At the conclusion of the State's case, in addition to the objections above stated, appellant made a motion in writing to strike out all the evidence of his wife for the following reasons: First. That the admissions of said alleged acts and declarations of the said Minnie Richards, who is the wife of this defendant and was his wife at the time of the alleged homicide, was in effect the making said Minnie Richards a witness for the State against this defendant, her husband, and said Minnie Richards being no longer the codefendant of this defendant because she having been tried and acquitted and ad-judged not guilty as a participant in the killing of the deceased, W. T. McCall, and, therefore, said testimony should not now be admitted and should now be withdrawn from the jury and stricken from the record, and the jury instructed not to consider same. Second. Because the State has rested its case, and the only proof that could tend to raise the issue of conspiracy that has been introduced before the jury is the alleged acts and declarations of the alleged co-conspirators, Minnie Richards and W. H. Wilson, and same in and out of themselves cannot be used as evidence of such conspiracy, and could only have been admis-sible after such conspiracy had been shown to exist by other testimony outside of and independent of the said alleged acts and declarations. Third. Because said Minnie Richards having been tried and acquitted and thereby her acts and declarations having been adjudged innocent, were not a part of a conspiracy to commit the alleged homicide, and she being discharged from the record and adjudged not guilty of any crim-inal participation in the alleged homicide, her acts and declarations were inadmissible against this defendant, where such acts and declara-tions were made out of his presence. We have thus given a full state-

ment of the testimony objected to and the grounds of such objection to the end that the issue in question may be fully understood and our opinion thereon readily comprehended. It has been the uniform holding of this court that where a conspiracy is shown (which is usually inductively proven from circumstances) then the declarations of one conspirator in furtherance of the common design as long as the conspiracy continues, are admissible against his associates, though made in the absence of the latter. The least degree of concert or collusion between the parties to an illegal transaction makes the act of one the act of all. Hannon v. State, 5 Texas Crim. App., 549. If two or more act together with unlawful intent in the perpetration of crime, they are co-conspirators and principal offenders by reason of their common design and· co-operation, and whether they be tried jointly or separately, the acts and declarations of each pending and in pursuance of the common design, and tending to throw light upon its execution or upon the motives or intent of its perpetrators, are competent evidence against each and all of them. Cox v. State, 8 Texas Crim. App., 254; Taylor v. State, 3 Texas Crim. App., 169; Myers v. State, 6 Texas Crim. App., 1; Phillips v. State, 6 Texas Crim. App., 364; Baker v. State, 7 Texas Crim. App., 612; Avery v. State, 10 Texas Crim. App., 199; Loggins v. State, 8 Texas Crim. App., 434; Post v. State, 10 Texas Crim. App., 598; O'Neal v. State, 14 Texas Crim. App., 582; Pierson v. State, 18 Texas Crim. App., 524; Kennedy v. State, 19 Texas Crim. App., 618; Phillips v. State, 26 Texas Crim. App., 228; Clark v. State, 28 Texas Crim. App., 189; McKenzie v. State, 32 Texas Crim. Rep., 568; Blain v. State, 33 Texas Crim. Rep., 236; Cline v. State, 34 Texas Crim. Rep., 347. It has also been held that proof must be adduced before the jury of the defendant's complicity at the time such acts were done or declarations made by his alleged confederate. The sufficiency of this proof as a predicate for the imputed acts or declarations is primarily determinable by the presiding judge; but if its sufficiency is an issue in the case, it should be submitted to the jury, with instructions to disregard the putative acts or declarations in case they deem the defendant's complicity not established. Loggins v. State, 8 Texas Crim. App., 434; Crook v. State, 27 Texas Crim. App., 198. In this case, in respect to this matter, the court charged the jury as follows: "The jury are instructed that certain acts and declarations of Minnie Richards and W. H. Wilson, which were out of the presence of the defendant, have been admitted before you, and as to such acts and declarations you are instructed that before same could be used for any purpose against this defendant it must have been first shown by the State by other evidence independent of such acts and declarations beyond a reasonable doubt that a conspiracy had been formed between the defendant and said Minnie Richards and Wilson to kill W. T. McCall, and that any agreement that may have existed between said Minnie Richards and Wilson and the defendant had in its contemplation the killing of said McCall and nothing else; and you

are further instructed that you cannot use such acts and declarations as proof of a conspiracy between said Minnie Richards and said Wilson and this defendant to kill W. T. McCall." Under the rules above stated, certainly if there was evidence sufficient to justify the conclusion and inference of a conspiracy between these parties to kill McCall, this testimony was admissible. The presence of all three of these parties in Austin together, from a remote section of the State; the facts as shown by the evidence that just a short time before the killing appellant secured a carriage, drove near the house where they had been stopping, and where presumably his wife yet remained, his act in wanting the driver of the carriage to go to the house to see who was present, the appearance of Wilson about this particular time, the singular meeting of McCall and appellant's wife, the appearance of appellant on the scene, the near proximity of Wilson to them, the immediate return of all the parties to the Norris boarding house soon after the killing, their preparations for flight, and other circumstances lend strong probability and, at least, furnish some support to the contention of the State that there was between all the parties a conspiracy to kill McCall; at least, we think such a showing was made as authorized the introduction of this testimony in connection with the appropriate instructions given by the court.

2. Appellant, however, as will be seen from the objections above stated, makes the further point that inasmuch as his wife, Minnie Richards, had been acquitted of the murder of McCall, that no act or declaration of hers is receivable in evidence against appellant. In support of this proposition he refers to the case of Paul v. State, 12 Texas Crim. App., 346. That case, we do not believe, supports this contention. There Paul was charged by indictment with the substantive offense of a conspiracy to rob. In that opinion Judge White says: "On the trial defendant offered to prove that his codefendant, Chester Baker, had been acquitted after a trial had on this same indictment, and offered to read in evidence the record in Baker's case showing his trial and acquittal. To this the counsel for the State objected, and the court sustained the objection, and refused to permit the offered evidence to be introduced; and defendant saved his bill of exceptions to the ruling of the court including the evidence. This is the main error relied on for reversal." The question raised in that case was, from brief of counsel which appears in the official report, "That where one of several charged with conspiracy has been acquitted, the record of acquittal is evidence for another subsequently tried." However, in the course of the opinion Judge White does say: "In view of another trial it may not be improper further to remark that the acquittal of Baker would also render his acts and declarations in furtherance of the common design inadmissible as evidence against the other defendants; because, if he was not a co-conspirator, his acts and declarations could not be binding upon them." It will be readily seen that this last statement was not called for by the facts of the case, and was clearly obiter dicta. We

have, however, such high respect for any statement of Judge White deliberately made, that if this case was analogous to the Paul case, we should long hesitate before adopting a different holding from that which seems to have been favored by that learned and distinguished jurist. However, in the Paul case the substantive offense charged was a conspiracy, a conspiracy to rob. Here the offense charged is the crime of murder, and the fact of a conspiracy is but an incident in the case, and an incidental fact to be established as the basis for admitting testimony in support of the crime charged. The statement of Judge Henderson, in the case of Holt v. State, 39 Texas Crim. Rep., 282, expresses a very different view from that declared in the Paul case. In the Holt case, the decision invoked by appellant here was asserted and sought to be sustained, and in some respects thereto Judge Henderson says: "It was held that if one or two joint conspirators should be acquitted, the record of such acquittal could be introduced in evidence on the trial of a subsequent conspiracy. This was based on the principle that if two are charged with a conspiracy, and one is acquitted, the other must be acquitted also, though he be guilty of doing the act charged, for it would be no conspiracy however, otherwise it may be a crime. Dever v. State, 37 Texas Crim. Rep., 396. It is true, the court, in passing say that 'where one of several joint conspirators has been acquitted, the acts and declarations in furtherance of the common design are inadmissible as evidence against the other defendants, because, if he was not a conspirator, his acts and declarations could not be binding upon him.' But this matter was not before the court. We think that where a party is charged with a substantive offense, not a conspiracy, and it appears that the same was in pursuance of a conspiracy, the acts and declarations of one shown to have been engaged in the conspiracy are admissible as evidence, notwithstanding such conspirator, whose declarations are sought to be admitted, has previously been acquitted. We would further remark, in regard to this charge, that the objection thereto is found in the motion for a new trial; and it does not show that Will Holt had been acquitted, so that the question is not raised." It will be seen by an inspection of the opinion in the Holt case that, as claimed by counsel for appellant, the statement of Judge Henderson in opposition to the former statement of Judge White in the Paul case, was obiter in that as he states, "the question is not raised." So that, as we believe, neither of the decisions of Paul v. State, supra, or Holt v. State, supra, on this precise question is authority, and that it may fairly be said in respect to both that they are obiter. Our own judgment is that where one is charged with this substantive crime of conspiracy, that he would be entitled to have placed in evidence the record of the acquittal of a co-conspirator, and that it may well be doubted whether in such a case the declarations of a co-conspirator would be admissible in evidence. However, where the substantive crime charged is murder or some distinct offense, and not a charge of the substantive crime of conspiracy, that whether the alleged co-conspirator had been ac-

quitted or convicted on a proper showing, his declarations and admissions would be and should be receivable in evidence, a predicate having been laid and such declarations being otherwise admissible. We know of no statute or rule of law which makes them inadmissible; nor can we conceive of any good reason why they should be so held. We think that the adoption of the rule contended for by appellant would frequently defeat proper administration of law and as frequently defeat the ends of justice. The question really decided in the Paul case is correct, for there can be no conspiracy unless there is more than one person engaged in it. In the trial of a substantive offense, such as murder, a defendant may be bound by the acts and declarations of another party when perhaps the testimony would not be sufficient to convict him of the particular offense. Again, if a party should be acquitted of the offense and the acquittal resulted from the failure of the State to procure the testimony. against him, and afterwards the State comes in possession of other facts, it would be an unwise rule to say that by reason of such acquittal the State could not introduce his admissions and declarations when a conspiracy was incontrovertibly shown and his guilty participation in such conspiracy made evident. It seems to us by analogy, article 89, of the Penal Code, should furnish some light on this question. That article is as follows: "An accomplice may be arrested, tried and punished before the conviction of the principal offender, and the acquittal of the principal shall not bar a prosecution against the accomplice, but on the trial of an accomplice the evidence must be such as would have convicted the principal." Now, in every case where one is sought to be prosecuted as an accomplice, it is indispensable that the proof should show the guilt of the principal offender, and this the authorities hold must be shown beyond a reasonable doubt. There can, in the nature of things, be no accomplice unless there shall be a principal, and yet our statute provides, and such provision has frequently been upheld, that notwithstanding the acquittal of the principal, that on proper proof the accomplice may nevertheless be tried and convicted. The question presented is one of some difficulty, and candor compels the statement that we are not free from doubt, but we believe the rule here stated is the sound and correct rule.

3. On the trial of the case appellant introduced, in his behalf, as a witness, his wife, Minnie Richards. She testified, in substance, that in 1901 while attending a summer normal at Willis, Texas, that she had taken a walk with deceased, McCall, and during this walk McCall had tried to induce her to have sexual intercourse with him, which was declined, and that on a Sunday night when she had just been at Willis about a week, and when she was at home alone in her boarding house at night, the people in the house and others staying there having gone to church, that McCall came in and succeeded in having intercourse with her against her wishes, and that she had also gone to church on one occasion at night with McCall, and that they got up during the service and left the church, and went by an old house situated near the road on

the way to her boarding house in a clump of trees, and that McCall induced her to go into said house. There were no other walks or acts of intimacy shown by her on her original examination between herself and deceased. The testimony further showed that these facts substantially were communicated to appellant. On cross-examination, over the objection of appellant, the State was permitted to prove by appellant's wife that she would frequently go out walking with McCall at night, and that she would not get back from her walk with deceased until very late at night, and that they would sit down and talk, and that sometime on such occasions deceased would talk about having intercourse with her. That sometime during such walks she begged deceased to take her home, and he would say he wanted to be with her longer, and that during such times he was talking about having intercourse with her. "That she gave it to him, and that he got it out in the country." Other acts of intercourse between McCall and Minnie Richards were proven, over the objection of appellant, and, among others, that she had had intercourse with him in a water closet at her boarding house, and at an old house she and deceased had stopped at on their way from church, and that several other acts of intercourse had occurred during walks taken by them. It was also shown on cross-examination that other persons than McCall were attentive to her while she was staying at Willis. It is claimed that this testimony was inadmissible, and that same was highly prejudicial to appellant; that the homicide must be viewed from his standpoint; and it shed light on his motives at the time of the homicide, as well as the extent of the provocation for him to show that he believed deceased had had intercourse with his wife *one time* and against her wishes. This testimony was objected to for the reason, in substance, that same was not in cross-examination of anything elicited from the witness, Minnie Richards, on her direct examination, and same was the making of said witness a witness for the State against the defendant, and because if the first act of intercourse between McCall and said witness was without her consent, it was immaterial what other or further walks or what other or further acts occurred between her and deceased after said first act, and because same was calculated to discredit the witness in the eyes of the jury, and was calculated to inflame and prejudice the jury against the witness and to cause them to discredit her. In this connection we desire to consider another bill of exceptions taken to the argument of the district attorney. It appears from the bill that in his argument the district attorney made the following statement: "Then take Perkins' testimony; take F. I. Richardson's testimony, and take the other testimony as to what these people did down there in Galveston, and it simply corroborates Minnie, the prostitute, doesn't it? Talk about comparing that woman with your wife!" Mr Brockman. "Has anybody done that, Mr. Hamilton?" Mr. Hamilton, "Oh, shame! Oh, shame!" Mr. Brockman: "If the court please, that argument is not only illegitimate, but it is intended to inflame the jury and mislead the jury as to the arguments

that have been presented here. Counsel knows that nobody has compared this woman." Mr. Hamilton: "I am not mistaken." The court: "Well, Judge, if you want to take a bill of exceptions——." Mr. Brockman: "That's my grounds of objection, and I except for that reason." Mr. Hamilton: "I may have been mistaken. You said to put yourselves—to put yourselves in that man's shoes—Mr. Dickens, the billy goat man. He gets up here and goes through the goat act again on this proposition. He tells you, 'Suppose it was my wife or your wife, what would you do?' Can't you see him as he winds the mountain? Can't you see his anatomy? What would you do if it was his wife or your wife? Oh, shame, where is thy blush? Government mule, in the name of God, where is your cheek? Minnie, the prostitute! Minnie! .a nice, virtuous woman, either colored or white! Minnie!" It will thus be seen that the district attorney used, if it was proper to use it, the evidence of other acts of carnal intercourse between appellant's wife and McCall to discredit said wife, and practically to destroy her testimony. The bill of exceptions and statement of facts all show that appellant had gone no further than to prove by his wife the single act of intercourse claimed to have been against her will committed on the night named in Willis during the session of the summer normal; nor was there any testimony on her direct examination that any other or further act of intimacy was committed between the parties. The testimony showed beyond doubt or question that the act of intercourse claimed to have been committed against her will was the first act of intercourse ever had between them and, as stated, it was the sole and only act of intimacy which the testimony shows was disclosed to appellant. So that the question recurs whether or not, in this state of proof as made on direct examination, it was competent and proper to permit the State to prove other different and subsequent acts of intercourse between the parties, none of which had been testifid to, and of which no illusion was made on the examination in chief. This question has been distinctly and unequivocally ruled against the State in the case of Jones v. State, 51 Texas Crim. Rep., 472; 101 S. W. Rep., 993. In that case Judge Henderson says: "The appellant having proven in his defense to reduce his case to manslaughter one act of so-called rape or illicit intercourse between deceased and his wife, and its communication to him by his wife, and his shooting deceased on the first meeting thereafter, was it pertinent or germane to her examination in chief to prove by her on cross-examination a number of other acts of illicit intercourse covering several years? We think not. These other acts mentioned could not affect him from his standpoint, not being shown to have knowledge thereof. Of course, the question would be presented differently if knowledge was brought home to him of such acts of intercourse; but here all that can be said in regard to this is that, on account of the frequency and long continuance of these acts, the circumstances were such as to bring home to appellant notice of same. But we do not believe the testimony can be admitted on that theory. Other witnesses

might testify to such facts, if circumstantially their testimony brought home to appellant's notice; but the principle here involved is simply: Can the wife, on cross-examination, be made to testify to new and original evidence against her husband not pertinent or germane to her examination in chief? As heretofore stated, the authorities are all against this proposition, and we accordingly hold that the court improperly admitted this character of evidence against appellant, and we believe it was calculated to prove hurtful to him. From it the jury might believe that appellant knew of the lewd conduct between his wife and deceased, or should have known of it, and consequently weakened his defense of manslaughter." It is said by Judge Davidson, in the case of Stewart v. State, 52 Texas Crim. Rep., 273; 20 Texas Ct. Rep., 592: "That when the wife testifies in behalf of her husband, the State may cross-examine her in regard to matters about which she has testified; but the State will not be permitted to depart from the line of investigation elicited from her by her husband, and interrogate her about new matter, for this would be making the wife a witness for the State. See also Messer v. State, 43 Texas Crim. Rep., 97; Washington v. State, 17 Texas Crim. App., 197; Hoover v. State, 35 Texas Crim. Rep., 342; Gaines v. State, 38 Texas Crim. Rep., 202; Creamer v. State, 34 Texas, 173; Greenwood v. State, 35 Texas, 587; Merritt v. State, 39 Texas Crim. Rep., 70; Johnson v. State, 28 Texas Crim. App., 17; Hamilton v. State, 36 Texas Crim. Rep., 372; Owen v. State, 7 Texas Crim. App., 329; Red v. State, 39 Texas Crim. Rep., 414; Bluman v. State, 33 Texas Crim. Rep., 43." The writer has been inclined to believe that rule on this subject has, perhaps, been carried in this State further than it should have been, and holds to the belief that where appellant introduces his wife as a witness in his behalf, she should be held to be subject to a fairly liberal cross-examination touching every matter which might or would have the effect to test the credibility, the accuracy of her statement, the character of her memory, or indeed any other fact reasonably growing out of or having any fair relation to the subject matter of her direct examination, and would have been inclined to have doubted the correctness of the rule laid down in Jones v. State, 51 Texas Crim. Rep., 472; 101 S. W. Rep., 993, but we believe under any rule or decision ever held or adopted in this State, that the testimony in this case was erroneously admitted. Here the sole testimony introduced by appellant was an act of carnal intercourse between deceased and his wife at a time and place given, which it is claimed was against her will. It is possible that prior acts of intimacy would have been admissible, but all the testimony introduced here relates to subsequent misconduct between the parties, none of which is shown to have been known to appellant, for the reason that all these acts took place in his absence, and none of this testimony, if receivable, disproved the act of intercourse testified to by the wife on direct examination in the first instance. For this error of the court, in a matter vital to the defense, we think the judgment must be reversed.

4. Again, we think there was error in the 31st paragraph of the court's charge. This portion of the charge is as follows: "You are further instructed that if you believe from the evidence in this case, viewing it from the standpoint of the defendant at the time, that immediately before the killing of the said W. T. McCall by defendant the said McCall had made a demonstration as if to draw a weapon and from the manner and character of said demonstration (if any) and the defendant's knowledge of the *character* and *disposition* of the deceased defendant was caused to have a reasonable expectation or fear of death or serious bodily injury, and that defendant, acting under such reasonable expectation or fear and while such reasonable expectation or fear continued, shot and killed the deceased, or if you have a reasonable doubt as to said facts, then you will acquit the defendant, although you may believe from the evidence that the deceased in fact had no weapon at such time, and that the defendant was in truth in no danger from an attack by deceased." The vice of this charge is the inclusion in the paragraph copied of these words: "Knowledge of the character and disposition of the deceased." There was no evidence of what his character and disposition were, and little, if any, evidence of appellant's knowledge of same, at least within recent years. Almost this identical charge was condemned by this court in the case of Hickey v. State, 45 Texas Crim. Rep., 297; 76 S. W. Rep., 920. In that case Judge Davidson, speaking for the court, says: "On the issue of self-defense in a murder case, a charge qualifying the right by reference to defendant's knowledge of the character and disposition of the deceased and the relative strength of the parties, was error where there was no evidence as to such matters." The charge there considered was as follows: "If from the evidence you believe defendant killed said Tom Dixon, but further believe that at the time of so doing deceased had made an attack on him, which from the manner and character of it, and the relative strength of the parties, and defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation of fear of death or serious bodily injury, then, acting under such reasonable expectation or fear, defendant killed deceased, etc., you will acquit him." It is said in the opinion that there was no evidence in regard to these matters, and that appellant had the unquestioned right to defend against an attack made on his person in the manner indicated by his testimony. In that case, however, it appeared from the testimony of the defendant that he was fired upon twice by deceased with a sixshooter, and it was stated correctly that it would make no difference what was the character or disposition of the deceased or appellant's knowledge of these facts. It does appear, however, in the case that appellant and deceased were well acquainted, and that Hickey had lived in the house with deceased, and presumably was well acquainted with him. Under the facts of this case it is not certain that the judgment should be reversed for this charge though we doubt the propriety in any case in the absence of proof showing the nature and

character of the deceased the inclusion of such matters in the charge, and suggest on another trial the elimination of this clause from the charge of the court.

5. We think the 17th paragraph of the court's charge is subject to criticism, and it probably had the effect to mislead the jury. In this case appellant offered in absolute justification of the killing of McCall testimony that at the time he shot McCall the parties were in the act or just then had been in the act of carnal intercourse, and that, as the law authorizes, he took the life of McCall because of the then present adultery with his wife. He also offered evidence of the previous assault on his wife, and the fact that the shooting occurred at the first meeting, for the purpose of reducing the homicide to the grade of manslaughter, as well as affecting the issue of self-defense. In his charge to the jury, in defining adequate cause, the court charged the jury, in effect, that adultery of the person killed with the wife of the person killing, provided the killing occurred as soon as the fact of illicit intercourse is *discovered* or communicated to the husband, is an adequate cause, and that it did not matter whether or not in fact said intercourse had taken place provided the husband believed that said intercourse had taken place. Thereupon, and in this connection, the court further charged: "But in this connection the jury are further charged that where the provocation is the adultery of the deceased with the wife of the slayer, it is not required that such provocation should arise at the time of the homicide, but the killing would be only manslaughter, provided, however, it occurred as soon as the parties meet after the fact of the illicit connection was discovered by the slayer." We think the use of the word "discovered," having in view the claim and contention of appellant that just at the time of the killing he had caught deceased and his wife in adultery, was possibly calculated to mislead the jury, and to confuse the two defenses. The charge in the absence of proof of carnal intercourse at the very time of the killing would have been probably unobjectionable, but where appellant, as in this case, relies on present adultery as justification, and there having been also proof of previous carnal intercourse, the jury would likely confuse the charge here given in respect to manslaughter with the charge given on justifiable homicide based on adultery of the parties at the time of the killing.

6. We think, too, that the use of the word "possibly" in the following portion of the court's charge was calculated to mislead the jury, and injure appellant: "When adultery is an issue it may be established by circumstantial evidence, and though a mistake as to the fact of the adultery may possibly exist, yet if a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal, he is guilty of no offense; provided, however, it be such a mistake as does not arise from want of proper care on his part." We think the use of the word "possibly" ill-advised because same is too restrictive and puts a greater burden upon appellant than the law authorizes, and might be understood to contain an intimation to the jury unfavorable to appellant.

7. There are a number of matters in the very voluminous record which we have not discussed. They have been carefully considered, and except the matters to which we have adverted, we think, in respect to all of them, that appellant is without substantial ground of complaint. There are many criticisms made of the court's charge, but we believe that taken as a whole and considered together, they are not of such a character as to require a reversal. The case presented many issues, and was indeed one difficult to present clearly and intelligently. In a general way the charge of the court is to be commended, and except in the respects above noted, is not seriously subject to criticism.

For the errors pointed out above, the judgment of the court below is reversed and the cause is remanded.

*Reversed and remanded.*

Brooks, Judge, absent.