## TUCK HOOVER v. THE STATE.

### No. 1156.   Decided October 16th, 1895.

### Motion for Rehearing Decided December 21st, 1895.

**1.  Murder—Self-Defense.**

On a trial for murder, where the defense was self-defense, and it appeared from the evidence that defendant had heard deceased had threatened to kill him; and having armed himself went into the house of deceased, pistol in hand, and remarked to him, "I understand you' intend to kill me?" Whereupon deceased moved his hand to his side, and defendant shot and killed him. Held: There was no self-defense in the case.

**2.  Same.**

Where deceased has threatened to kill defendant, and defendant arms himself, goes into deceased's house and kills him because he has threatened his life, there is neither manslaughter, self-defense or anything else short of murder in such case.

#### ON MOTION FOR REHEARING.

**3.  Cross-examination of Defendant's Wife as a Witness.**

On cross-examination of a wife, who has testified as a witness for her husband, she can be interrogated only as to such matters as naturally spring out of, and apper- tain to, her examination in chief; and it is error to permit her to be cross-examined as to original matters, which may be used against or are prejudicial to her husband. Following, Bluman v. State, 33 Tex. Crim. Rep., 43.

APPEAL from the District Court of Colorado.   Tried below before Hon. T. H. SPOONER.

This appeal is from a conviction for murder in the second degree, the punishment being assessed at twenty years' imprisonment in the peni- tentiary.

The indictment charges appellant with the murder of Jake Burttschell, on the 30th day of April, 1894, by shooting him with a pistol.

Deceased was a saloon-keeper, and was shot by defendant three times. The two witnesses, who testified to seeing the commencement of the shooting, state, that defendant rode by the door of the saloon, dis- mounted, came into the saloon with pistol in hand, and said to de- ceased:   "Jake, I understand you said you were going to kill me?" and, as deceased turned towards him, he immediately fired; and, as deceased fell forward, he fired again, and then left the saloon, mounted his horse, and fired again at deceased, who was then lying with his face to the floor.   Defendant rode off rapidly to Columbus, where he surrendered, and was put in jail.   He told the sheriff and jailer he wanted to make a statement, which he did, and his statement then made was substantially as stated by the two witnesses above.

At the trial evidence was introduced by defendant, showing that his, de- fendant's, step-daughter had been engaged to a man by the name of Brown.  That Brown did not marry her, but married a widow a day or so before the killing.   Tyler Wade testified, that Brown had told him the reason why he did not marry defendant's step-daughter was because deceased had told him she was "too flip."   That on the day before the killing he told this to defendant in the town of Sealy, and promised

defendant that on the next Tuesday he would come up to Alleyton and go with defendant and face Brown and deceased about the matter.

Defendant testified in his own behalf; and, according to his testimony, he had been threatened by deceased with regard to his knowledge of the killing of a negro named Bill Burrell, several years before, and was apprehensive; deceased and his relatives had been following and watching him. He also corroborated the testimony of Tyler Wade in regard to his statement to him about what Brown told him, as to the reason why he did not marry his step-daughter. On his cross-examination defendant testified: "I did not speak to deceased as I rode up to the saloon, neither did he speak to me. I did not kill deceased because of the language used towards my step-daughter. I would not have killed him about that. The main reason was because of the threats against me."

Defendant's wife was called as a witness by him. On her examination in chief she testified as to defendant's acts and conduct after his return from Sealy, the night before the killing; and also to defendant's uneasiness and apprehensions of danger for about four weeks before the killing. On her cross-examination, the State, over objections of defendant, proved by her that, several years ago, she knew defendant had shot one of the Sparks boys, and that he and the Sparks' had never made friends.

*Kennon & Adkins*, for appellant.—The court erred in permitting the State, over objections of defendant, to prove, on cross-examination of defendant's wife, Mrs. Hoover, that several years before this homicide defendant had shot one of the Sparks boys. Code. Crim. Proc., Art. 735; Johnson v. State, 28 Tex. Crim. App., 17. ·

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HURT, PRESIDING JUDGE.—The appellant in this case was convicted of murder of the second degree, and his punishment assessed at twenty years' confinement in the penitentiary. The record contains 106 pages of closely written matter. It is unnecessarily voluminous, containing a great many immaterial things. If the State's theory be correct—and it is very cogently supported—appellant was guilty of murder of the first degree. Appellant relied upon self-defense, bottomed alone upon his own evidence (he having testified in the case). The State does not concede that his version of the facts attending the homicide is correct, but contradicts him by at least two eye-witnesses, who swore to facts which place him in the attitude of an assassin, and, in support of these witnesses, refers to his confession made to Bridge and Reece. But, conceding that defendant's version is correct, the State replies that he is estopped from pleading that his life or body was in danger, because he did that which, if not intended, was in its very nature calculated to induce the deceased to do just what he did do, and that appellant must

have known and did know, that his own violent conduct caused the deceased to act as he did, and this was known to appellant before he shot. A.'s life is threatened by B.   A. arms himself with his pistol, and goes into the house of B, pistol in hand, ready for immediate use, and remarks to him: "I understand that you intend to kill me."   B. moves his hand to his side.   A. shoots, and kills him.   Under this state of case, B. would have been excused if he had drawn and fired.   But what, in fact, was appellant's intention when he entered the saloon, or why, or for what reason did he kill deceased?   It is true, he states that deceased threw his hand to his side, and that he was moving towards the counter, and that he feared that his purpose was to obtain a pistol.   Concede all this.   Concede that appellant believed his life in danger, that in fact deceased was attempting to procure a pistol for the purpose of killing appellant, and that appellant so understood his conduct.   Still, his own violent conduct was not only calculated to induce deceased so to act, but was the natural result of the conduct of appellant.   No rational man could have expected anything else than a resort to deadly weapons.   And while it may be true that appellant had good reason to, and did, from the conduct of deceased, apprehend danger to his life, etc., yet he knew that his own acts had caused the danger.   But why did appellant kill deceased?   He answers this question by deliberately stating that he did not kill deceased because of the insulting language towards his female relative, but because he (deceased) had threatened to kill him.   If this be true, all that deceased did ceases to be a factor in self-defense.   Why? Because the acts of deceased did not induce appellant to kill him, he being killed because he had threatened to kill appellant.   We have, therefore, this simple proposition:  A. threatens to kill B.   B. arms himself; goes into the house of A., and kills him, because he had threatened his (B.'s) life.   There is neither manslaughter, self-defense, nor anything else short of murder, in this state of case.

There was no objection made to the charge when given, and, if not strictly correct, the imperfections were not calculated, under the circumstances of this case, to remotely prejudice the rights of the appellant.   That deceased had killed a negro was proven, and that appellant would have been a good witness for the prosecution was also shown, but the minute circumstances of this homicide were not material.   All of this matter was introduced in evidence for the purpose of showing a motive for the killing of defendant by deceased, and hence to corroborate appellant's version of the facts attending the killing.   Let this be conceded.   Deceased was killed, not because he made motions with his hands, or moved towards the counter, but because he had threatened the life of appellant.   We have examined closely all of the bills of exceptions, and believe them without merit.   The matter elicited by the State from the wife of appellant was germane to her testimony in chief.   There is no reversible error in this record, and the judgment in affirmed.

*Affirmed.*

ON REHEARING.

HURT, PRESIDING JUDGE.—The judgment in this case was affirmed at a former day of this term, and now comes before us on motion for a rehearing. We have carefully examined the opinion heretofore rendered in said cause, and adhere to all the views therein expressed, except as to the admission of the evidence of Mrs. Hoover, the wife of appellant. . She was introduced by appellant in his behalf, and testified as to his mental condition, and that he was in a state of apprehension or alarm for some time prior to the homicide. On cross-examination, over the objection of appellant, the State was permitted to prove that, some years before this, appellant, her husband, had shot one of the Sparks boys, and that just previous thereto, he was in a similar condition of mind. We heretofore held that this evidence was germane to her testimony in chief, but on a more careful and thorough examination of the question, in the light of the authorities, we are of the opinion that we were in error. The ule is well established that the wife can be introduced on behalf of her husband, and that on cross-examination she can be interrogated only as to such matters as naturally spring out of and appertain to her examination in chief. This testimony did not spring out of, and was not germane to, the examination in chief. It was original evidence, and of a most damaging and material character. In fact it was producing in evidence before the jury, against appellant, testimony of another and distinct crime than that for which he was then on trial. It was calculated to inflame the mind of the jury against appellant, and to prejudice his rights as to the case then on trial. We adhere to the rule heretofore laid down by this court in the case of Bluman v. State, 33° Tex. Crim. Rep., 43. The motion for a rehearing is granted, and the judgment is reversed and the case remanded.

*Reversed and Remanded.*