## Will Marsh v. The State.

### No. 3912. Decided June 27, 1908.

**1.—Murder—Insult to Female Relative—Husband and Wife—Cross-Examination.**

Where upon trial for murder the wife of the husband testified in his favor that deceased had offered her an insult, there was no error in cross-examination to discredit her as to testimony she gave during an examining trial with reference to the matter elicited in the examination in chief, the court limiting said testimony to her credibility.

**2.—Same—Evidence.**

Where upon trial for murder the wife of the defendant testified to an insult towards her by the deceased, testimony which was brought out on cross-examination and which was no part of the transaction or the conversation or matter inquired of from her on her examination in chief, and which related wholly to another transaction subsequent to the killing, was inadmissible.

**3.—Same—Evidence.**

Upon trial for murder it was a legitimate subject of cross-examination of defendant's wife to show that her statement with reference to an insult by deceased was at variance with her conduct towards deceased.

**4.—Same—Evidence.**

Where the matter objected to, covered part of the same transaction and had reference to the same time originally testified to by defendant's wife there was no error, the same having been properly limited by the court to the witness' credibility.

**5.—Same—Demeanor of Witness.**

The demeanor of a witness and his appearance, as to whether he was angry or not, are legitimate matters to be testified to by witnesses in the trial of all criminal cases.

**6.—Same—Murder in First Degree—Manslaughter.**

Where the defendant was convicted of manslaughter he could not complain of the charge on murder in the first degree.

Appeal from the District Court of Jones. Tried below before the Hon. Cullin C. Higgins.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.—Cited cases in the opinion.

RAMSEY, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at five years confinement in the penitentiary.

The facts in the case show the following: Defendant lived in Cisco, Eastland County, and deceased Baggett in the town of Hamblen, Jones County, and on the 30th of April, 1907, deceased was at his residence just after dinner, and in his house were five or six of his neighbors. They were all sitting around talking after the midday meal. Defendant came up to the house, spoke to deceased; deceased invited him into the house; they shook hands; the deceased introduced defendant to the different people in the house; requested his wife to prepare dinner for the defendant, when the defendant declined on the ground that he had eaten dinner. They all sat in the house from a half to three-quarters of an hour, engaged in common conversation, deceased making inquiries of defendant as to his family, their health, etc.; wanting to know if he came to the town prospecting, offered to go with him around over the edge of the town, defendant stating that he would return on the evening train which passed between three and four o'clock. The deceased was engaged in building a house some one hundred yards from his residence. At one o'clock he got up; the neighbors all left, and went to their different places, and deceased in company with Milton Newman, whom he had employed, went to the house they were working on; defendant accompanied them, and sat around the building talking, generally with the deceased. The deceased would be up on the house part of the time and down on the ground part of the time. After they had been at work some few hours the witness Newman together with deceased went to the workbench, sitting off some twenty or thirty feet from the building. As they started to the workbench the defendant asked the deceased if he had some water. Deceased directed him around the corner of the house. The witness and deceased were standing at the workbench, each with a board in his hand, when the defendant shot the deceased from behind twice, killing him, and then turned around and walked hurriedly towards the depot. These are the circumstances immediately surrounding the killing.

The defendant took the witness stand and testified of some lewd conversation with defendant's wife that deceased indulged in before he killed him. He also testified that he (defendant) had been informed by his wife that deceased on a visit to them at Cisco had insulted her and had made indecent and improper proposals to her, and that he had come to deceased's place in order to satisfy himself of the truth of what his wife told him, and becoming convinced of same, and fearing deceased was going to attack him, he shot and killed him.

Bill of exceptions No. 1 shows that after Mrs. Marsh, wife of appellant, had testified in his favor to the effect that deceased had offered her an insult, but did not testify and was not asked anything concern-

ing Cathaleen Adams, nor concerning the deceased pinching the said Cathaleen Adams on the breast, and after defendant finished his examination in chief of the said Mrs. Maggie Marsh, wife of defendant, she was turned over to the State's counsel to cross-examine, and counsel for the State interrogated her concerning deceased pinching Cathaleen Adams on the breast, and asked the witness if she did not testify on the examining trial and did not so state that deceased pinched Cathaleen Adams on the breast while she, the witness, and Cathaleen Adams and deceased were in the room on the evening witness claimed that deceased insulted her. Appellant objected because the same was not brought out by defendant on direct examination, and because the State could not prove the facts as a predicate to contradict and impeach the witness on immaterial and irrelevant matter, and because the evidence sought to be brought out was irrelevant and immaterial matter and calculated to injure the defendant. The objection being overruled, the witness testified, that while deceased and Cathaleen Adams and herself were in the room the deceased did pinch Cathaleen Adams on the breast and that she so testified on the examining trial. The State's counsel thereupon placed the witness, Cathaleen Adams, on the stand and proposed to prove by her that deceased did not pinch her on the breast at the time and under the circumstances testified to by Mrs. Marsh. Appellant objected to the testimony for the reasons above stated, and because it was forcing the wife to give testimony against the husband through the mouth of the witness, Cathaleen Adams. This bill is approved with the following qualification: "That after the wife of the defendant had testified concerning the insult of the deceased offered to her, the testimony elicited on cross-examination by the State was in the opinion of the court concerning the same transactions, more fully developing the matters testified to, and brought out as stated in this bill, and the general charge of the court limited the testimony of the wife on cross-examination to affecting her credibility, paragraph twenty-two of the court's general charge, and the court approved and gave the special charge of the defendant, limiting the testimony of Cathaleen Adams to the impeachment of the defendant's wife." In the case of Messer v. State, 43 Texas Crim. Rep., 97, we held that where a wife swears to certain facts and circumstances, the cross-examination must be confined to the matter elicited in chief. Of course, everything legitimate for the purpose of testing her knowledge of the fact testified to, her bias, her prejudice, in fact any matter that legitimately goes to her discredit, is admissible on cross-examination. The same rule is laid down by this court in the case of Earl Hobbs v. State, decided at the present sitting of the court on June 6, 1908. It follows, therefore, that the testimony complained of was strictly within the rule laid down in the last cited cases, and was legitimate cross-examination of the wife.

Bill of exceptions No. 2 shows defendant placed Mrs. Maggie Marsh, his wife, upon the stand as a witness in his behalf, and she testified that on the evening of April 13, 1907, that the deceased came to the

house of Mrs. Lizzie Adams and into a room where witness was and put his arm around her, mashed her on the breast, put his hand up under her dress and pinched her on the leg and said, "It looks like you could be good to me." Appellant did not ask his wife any question on direct examination concerning a conversation between the witness and Will Brown after the killing occurred. Thereupon the State's counsel asked the wife on cross-examination, the following question: "Q. I ask you if on the night you got the news that your husband had shot Jodie Baggett, in the town of Cisco, Eastland County, if you did not say to Will Brown on that night when he asked you what caused the trouble, that you told him, nothing at all but a foolish remark. I will ask you if you did not say this, it was nothing in the world that caused the trouble except a foolish remark of Cathaleen Adams." To which question the defendant then and there objected for the reason that same called for an opinion of the witness as to the cause of the killing, the witness having been shown to have been in Cisco at the time of the killing and that the killing took place at Hamlin, about one hundred miles distant and because the matter sought to be proved by this witness was not brought out by defendant on direct examination, and because the question asked called for evidence of the wife against her husband, and because the testimony elicited by said question is irrelevant and immaterial for any purpose and calculated to injure the defendant before the jury. The objections being overruled, the wife answered, "No, I did not." Thereafter the witness, Will Brown, was placed upon the stand and testified after a proper predicate was laid, "Yes, sir, she made that remark." This bill is approved with the following explanation: "That in paragraph twenty-two of the court's general charge, the court limited the entire testimony brought out by this defendant's wife to the matter of her credibility, and in the special charge prepared by defendant, number one, court limited the testimony of both Will Brown and Cathaleen Adams to affecting the credibility of the wife of the defendant, all of which charges were given to the jury as part of the law in the case."

Bill of exceptions No. 3 shows the State asked appellant's wife the following question: "Is it not true that a short time after you claim to have been insulted that Baggett left the house and then came back again and that you sat there in the house in a friendly conversation with this man whom you claim insulted you and that when Will Brown came, you two and he engaged in a conversation?" Appellant made the same objection to the testimony, and witness answered, "No, sir; it is not true." Thereupon the State was permitted, over appellant's objection, to prove by Will Brown that it was true, after laying a proper predicate. The court limited this testimony as shown by the bill to the credibility of the witness, Maggie Marsh, and gave appellant's special charge to that effect.

Bill of exceptions No. 4 shows that after appellants wife had testified in chief, State's counsel, over appellant's objection, asked her the following question: "Mrs. Marsh, you testified on the examining trial of

your husband here in Anson, before Judge Stinson on the 14th day of May, 1907, did you not? A. Yes, sir. Q. At that time you stated nothing at all on that examination about Baggett having offered you a drink out of a bottle in the presence of Cathaleen Adams, did you?" Appellant objected because the failure of the witness to testify on the examining trial is not a matter about which she could be contradicted, and because it is new matter about which the defendant did not ask her in the examination in chief, and because it is forcing the wife to give testimony against her husband, and is an attempt to impeach the wife on an irrelevant and immaterial matter about which she was not asked in the examination in chief. The objection being overruled, she answered, "No, sir; I don't think so."

We think the testimony complained of in bill of exceptions No. 3 was admissible as a circumstance tending to rebut and throw discredit on the original statement made by appellant. It was a legitimate subject of cross-examination in that this fact, if true, was at variance with her statement of an insult by Baggett, and should have been received and strictly limited for that purpose.

We understand that the matter objected to and covered by appellant's bill of exceptions No. 4 related to and covered part of the same transaction and had reference to the same time originally testified to by Mrs. Marsh. On this assumption, and for the purpose of impeachment as tending to effect the recollection and memory of the witness, we think this testimony, when properly limited, as it was, was admissible.

We do not believe, however, that the testimony included in bill of exceptions No. 2 should have been admitted. It formed no part of the transaction or the conversation or matter inquired of from Mrs. Marsh on her original examination. It wholly related to another transaction subsequent to the killing, and was not receivable either for the purpose of impeachment or as a circumstance adverse to appellant. Again, we think the testimony was objectionable in that it called for the opinion of the witness as to the killing. For full discussion of this matter see Richards v. State, 53 Texas Crim. Rep., 400; 110 S. W. Rep., 432; Jones v. State, 38 Texas Crim. Rep., 87; 40 S. W. Rep., 807; 41 S. W. Rep., 638; 70 Am. Stat. Rep., 719; Messer v. State, 43 Texas Crim. Rep., 97; 63 S. W. Rep., 643; Washington v. State, 17 Texas Crim. App., 197; Hoover v. State, 35 Texas Crim. Rep., 342; 33 S. W. Rep., 337; Gaines v. State, 38 Texas Crim. Rep., 202; 42 S. W. Rep., 385; Creamer v. State, 34 Texas, 173; Greenwood v. State, 35 Texas, 587; Merritt v. State, 39 Texas Crim. Rep., 70; 45 S. W. Rep., 21; Johnson v. State, 28 Texas Crim. App., 17; 11 S. W. Rep., 667; Hamilton v. State, 36 Texas Crim. Rep., 372; 37 S. W. Rep., 431; Owen v. State, 7 Texas Crim. App., 329; Red v. State, 39 Texas Crim. Rep., 414; Bluman v. State, 33 Texas Crim. Rep., 43; 21 S. W. Rep., 1027.

Bill of exceptions No. 5 shows that the State was permitted to prove by Milton Newman that when the defendant came to the house of deceased he did not appear to be excited, and that he, the witness, did not

notice anything unusual in his talk or conduct. The court in his charge to the jury withdrew this testimony, but we do not think there was any error in admitting it. The fact that appellant went to the house of deceased, sat on the gallery awhile in a quiet and composed way, and then went to the house deceased was building and stayed there quite a while before killing appellant, in a quiet and composed way, is a matter that the witness could testify about. The demeanor of a witness and his appearance as to whether he was angry or not are legitimate matters to be testified to by witness in the trial of all criminal cases.

Appellant complains of the charge on self-defense as not presenting real and apparent danger. This criticism is not correct. Charge No. 6 on the law of self-defense was covered by the main charge.

Appellant in his third complaint urges error in the charge on murder in the first degree. This charge passed out of this case since the verdict was for manslaughter.

For the errors pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Brooks, Judge, absent.