Tom Austin v. The State.

No. 7457.　Decided June 20, 1923.

Rehearing denied October 17, 1923.

### 1.—Incest—Evidence—Bill of Exceptions.

Where, upon trial of incest, defendant objected to testimony as to the child's condition at birth, which the court overruled, but stated in his qualification to the bill of exceptions that no question as to the child's condition at birth, whether normal or abnormal was further asked, there was no reversible error.

### 2.—Same—Reputation for Chastity.

Where defendant objected to the refusal of the testimony of witnesses who had known defendant a number of years and had never heard his reputation for virtue and chastity questioned, but it appeared that these witnesses at no time testified that they knew the general reputation of the accused in the community in which he lived, there is no reversible error.

### 3.—Same—Evidence—Impeaching Witness—Presence of Defendant.

Where, upon trial of incest, defendant introduced as a witness his daughter with whom the incestuous intercourse was charged, who testified that at no time had defendant ever had carnal knowledge of her, but that she had slept with him practically a year before the birth of her child, there was no error on cross-examination by the State to show that she had told the district attorney soon after the birth of said child that she was not going to tell who the father of it was because she didn't want to get her father into trouble, and this, although the declaration was made when the latter was not present.

### 4.—Same—Evidence—Cross-Examination—Impeachment.

Where the State claimed defendant's paternity of the child and his sequent incestuous intercourse with his daughter, which the latter denied, there was no error in permitting the State on cross-examination of his daughter relative to statements theretofore made by her as to the paternity of his child, and extended its inquiry as to the detail in some of the matters contained in her answers, the manifest purpose of such cross-examina- · tion being to lay predicate for the impeachment of the witness, and this would not make the girl a witness for the State.

95 T. C.—27

**5.—Same—Rule Stated—Impeachment of Witness—Predicate.**

While a witness for either side may not be impeached by proof of contradictory statements as to matters not material, the question as to what is material must vary with the facts and issues in each case, and when, as in the instant case, the State's cause rests chiefly on the proposition that defendant is the father of his daughter's child, the paternity of the child becomes a most material issue, and there was, therefore, no error in laying predicate for the impeachment of the witness.

Appeal from the District Court of Red River. Tried before the Honorable Austin S. Dodd.

Appeal from a conviction of incest; penalty ten years imprisonment in the penitentiary.

The opinion states the case.

*Charles Roach,* for appellant.   Cited, cases in the opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Red River County of incest, and his punishment fixed at ten years in the penitentiary.

As qualified by the learned trial judge appellant's first bill of exceptions presents no error. It was accepted and filed with the qualification attached. It appears that a physician, testifying for the State, was asked on direct examination as follows: "You say it was a normal child?" Witness answered, "No, I said that the period of gestation was normal. The child . . ." At this point appellant objected upon the ground that the child's condition at birth was inadmissible. The court overruled the objection, but states in his qualification to said bill of exceptions that no question as to the child's condition at birth, whether normal or abnormal, was further asked. With the qualification the bill shows no error.

Appellant's bills of exception Nos. 2 and 4 are reserved to the refusal of the testimony of witnesses who had known appellant a number of years and had never heard his reputation for virtue and chastity questioned. These bills of exception are also qualified, the learned trial judge stating that the witnesses at no time said that they knew the general reputation of the accused in the community in which he lived in the regard mentioned. There was no error in rejecting the testimony. A witness may be well known to another party and may have been so known for many years, without any knowledge on the part of the latter of his reputation in a given regard in the community in which the person inquired about, may live.

Appellant introduced as a witness the daughter with whom the incestuous intercourse was charged. She testified that at no time had appellant ever had carnal knowledge of her, but stated that she had slept with him after her mother's death for practically a year before the birth of her child; that he had heart disease and needed her attention. On cross-examination the State asked her if she had not had a conversation with the district attorney soon after the birth of her child in which she told him that she was not going to tell who the father of her child was "because I don't want to get papa into trouble." The daughter admitted that she did make this statement but claimed that what she meant was that her father would kill the person who did it. We can not agree with either contention made by appellant in his objection to this testimony. It was admissible for impeachment if denied, and being admitted by the daughter, became admissible as affecting her testimony upon the trial. Whether she made this statement or not was a material matter and it related directly to the question of whether her father had had such incestuous intercourse with her. With her explanation it was entitled to go to the jury as affecting her credibility. Neither do we find from the court's qualification to the bill of exceptions that appellant's contention that he was not present, is sound. It would be immaterial whether he was present or not if the matter be properly admitted as impeaching testimony of the daughter.

Appellant raises a number of objections which substantially involve the proposition next herein discussed. The State made a case of incest against appellant dependent practically upon the proposition that it showed him to be the father of his daughter's child, born out of wedlock, following almost a year of sleeping with him, during which time she went with no young men and received no company. To rebut or destroy this case the girl in question was introduced as a witness for appellant. She swore in chief that her father had had no intercourse with her. We have then an issue which might be stated as follows: The State contends that appellant's wife was dead, that he was denied the natural outlet of indulgence of carnal desire, that his sixteen year old daughter began sleeping with him and continued to do so for nearly a year, at the end of which time she gave birth to a child, and during this time she received the attention of no man and went with none anywhere but was accompanied to church and other places where she went by this appellant. She was delivered of a child in her own home in the presence only of appellant and a doctor summoned by him. Based on these facts the State asserted appellant's paternity of the child and his frequent incestuous intercourse with his daughter. In reply to this appellant offered the testimony of his said daughter to the effect

that she had not been carnally known by him, that she had slept with him because he had heart trouble which called for attention.

The State on cross-examination asked the daughter relative to statements theretofore made by her as to the paternity of her child and extended its inquiry as to details in some of the matters contained in her answers, the manifest purpose of such cross-examination being to lay predicates for the impeachment of the witness. She was asked if she did not tell the county attorney that a man whom she did not know came in a covered wagon to her father's house and there had intercourse with her and that the child resulted therefrom. This she denied. She was asked if before the grand jury she had not first mentioned a man named Gray, and finally said that Ben Hawkins was the father of her child. Gray she denied, but answered that she had told the grand jury that Hawkins was the father of her child and she now averred this fact to be true. She was then asked some questions relative to where and how often and under what circumstances she had intercourse with Hawkins and testified to two occasions when he came to her house while she was alone and there had intercourse with her. She had never gone with him anywhere nor had he called on her when anyone else was at the house. After having asked these questions the State in its rebuttal proved that she had made the statements to the county attorney and before the grand jury inquired about, and further produced two witnesses who testified that Ben Hawkins had left the community and the State and had gone to Oregon more than a year before the child in question was born. These matters have been thus stated because the questions raised by appellant's objections are practically the same and will be governed by the same ruling.

In our opinion the issue of the paternity of the child of appellant's daughter was directly and not collaterally involved. If the daughter had been a witness for the State and had testified that appellant had carnally known her, it is plain from the authorities that she might then have been asked on cross-examination by the defense if she had not told numerous witnesses named, that Jones or Brown was the father of her child and upon a denial it could be proved that she had made such statements. Tipton v. State, 30 Texas Crim. App. 530; Poyner v. State, 40 Texas Crim. Rep. 640; Gibson v. State, 45 Texas Crim. Rep. 312; Brown v. State, 52 Texas Crim. Rep. 267. If the girl had testified for the State that she had had intercourse with no other man than her father, the defense might impeach her by proving by others that she had carnally known them. Davis v. State, 36 Texas Crim. Rep. 548. These are not collateral matters. In the cases referred to the State relied on the girl to make out its case. On cross-examination she was asked if she had not stated to various persons that others than the accused had car-

nally known her. She denied this. It is universally held proper so far as we know to prove that she has made such statements. In the instant case we have facts calling for the application of the same rule. The defense seeks to destroy the State's case by testimony of the girl,—in effect that appellant is not the father of her child. Upon a denial by her of statements attributing the paternity of the child to different persons, the State proved that she had made such statements, and in order to show the falsity of her statement attributing its paternity to Hawkins, the State further showed the untruth and impossibility of such claim by proof that Hawkins had been away from the State for a half year before the date of the conception of said child. The legal effect of this testimony was no more than an attack upon the credibility of the witness in regard to her statements concerning a material matter and such evidence should have been limited in the charge to this purpose. We do not think the asking of questions solely for the purpose of laying predicates for impeachment can be held to make the girl a witness for the State or to prevent impeachment upon the ground that a party may not ordinarily impeach his own witness.

Appellant cites Porter v. State, 86 Texas Crim. Rep. 23, 215 S. W. Rep. 201; Casey v. State, 90 S. W. Rep. 1018; Wells v. State, 67 S. W. Rep. 1020; Finks v. State, 84 Texas Crim. Rep., 536, 209 S. W. Rep., 154; Mitchell v. State, 84 Texas Crim. Rep., 36, 204 S. W. Rep., 767, and Sauls v. State, 17 S. W. Rep., 1066 The only applicable proposition in the Porter case is, if the State seeks to draw out new matter from a defense witness on cross-examination, and fails to elicit the desired answer, it is error to allow the State to, impeach such witness by proof of the desired facts by other witnesses, and thus get hearsay evidence before the jury. The Casey case, supra, is to the same effect. The principle has no application because manifestly the State did not seek to prove by the girl in the instant case that either Hawkins or the unknown wagon driver was the father of her child. The questions relative thereto were merely asked as a predicate for impeachment. The Wells, Finks and Mitchell cases cited but assert that a defense witness may not be impeached because on cross-examination he denied having repeated certain statements as coming from the accused, by proof that he had so repeated such statements. The Sauls case, supra, is on a point entirely different.

Reverting to the question under discussion we observe that while a witness for either side may not be impeached by proof of contradictory statements as to matters not material, the question as to what is material must vary with the facts and issues in each case, and when as in the instant case the State's cause rests chiefly on the proposition that appellant is the father of his daughter's child,

the paternity of the child becomes a most material issue. True there might easily be a case of incest without the birth of a child,—there might be a case in which the paternity of the child could be ascribed to another and still guilt be shown, but such is not the case before us. In our opinion the questions asked were properly permitted and the answers thereto, and the proof made by the State of the falsity of the girl's claim in regard to the father of her child was also properly admitted.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

[Rehearing denied October 17, 1923. Reporter.]