Clarence Johnson v. The State.

No. 12751.   Delivered November 20, 1929.
Rehearing denied February 12, 1930.
Reported in 24 S. W. (2d) 825.

The opinion states the case.

*Miller & Price* and *Joe W. Taylor,* all of Waco, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, five years in the penitentiary.

Three former appeals of this case will be found reported as follows: 263 S. W. 301, 272 S. W. 783, 296 S. W. 887.

A vigorous contention is made that the evidence is insufficient. Much of the testimony has been set out in former appeals of this case and we feel that it is unnecessary to here again repeat it in detail. The main incriminating facts relied on by the State appear to be in substance as follows: Deceased, who was appellant's father-in-law, came to the home of appellant on the evening of the tragedy. He was found within a few feet of appellant's home with a bullet hole in his body. He died in a short time without making a statement. A freshly powdered burned hole in a window screen wire was found in the house of appellant at a point which made it possible for appellant to have stood behind this and shot deceased at the point where his body was found. The bullet found in the body of deceased was of a caliber which fitted a gun belonging to appellant and shown to have been in his possession on the evening in question. Appellant is shown to have left the house immediately after the shooting, carrying his gun, without extending any aid to the deceased, nor was he seen after the shooting around his home at any time prior to the removal of the body of deceased, which occurred some hours later. Within a few minutes after the shooting he was asked by a neighbor, who heard and witnessed the commotion at the house, if anybody was sick, to which appellant replied "old man Porter was sick." Being asked what was the matter with him "he said he didn't know what might be the matter with him, that they sent for a doctor." A physician testified that deceased could not have walked after being shot through the body as he was.

For the appellant it was testified by his wife that he was fooling with a gun in the house and that the gun went off accidently, after which deceased walked a distance of several feet and to the point where his body was afterwards found; that the appellant immediately went to the home of his father and asked him to send for a doctor and at that time and place told his mother that the shooting was an accident. He further offered medical expert testimony to show

that deceased, after being shot, could walk to where he was found after being shot. In rebuttal appellant's wife was contradicted by proof of a statement she had made to her sister immediately after the killing to the effect that appellant and her father had had some trouble and that appellant shot him.

Appellant did not testify.

While the evidence is not strong, we are not prepared to hold that the conclusion of guilt arrived at by the jury is not supported by the evidence. The recent powder burned hole through the screen, showing to have been fired towards the spot where appellant lay, and appellant's actions immediately after the shooting which failed to comport with his theory of an accidental killing were sufficiently cogent to support the verdict in our opinion.

The impeachment of appellant's wife as a witness is brought forward by a proper bill of exception. The record shows that this witness testified to facts and circumstances showing an accidental killing. It further shows that she went immediately after the shooting to the home of her sister a short distance away and she was asked on cross-examination by the State if she did not then and there state to her sister that Clarence (the appellant) and her father had some trouble and Clarence shot him. She denied this and proof that such a statement was made was introduced in rebuttal by the State. This statement made by her sister was in direct contradiction to the effect of her testimony given on the trial. Such testimony was held admissible on a former appeal of this case, 296 S. W. 887, where the authorities on the subject will be found collated.

Bill of exception No. 3 presents the alleged error of the Court in not permitting appellant to introduce a chart, the effect of which it is claimed was to contradict the State's witness who testified that the deceased could not have walked twenty-five or thirty feet after being shot. We are unable to appraise the merits of this bill because it does not affirmatively appear from the recitals of said bill that this would have been the effect of the chart in question, nor is it clear that such a chart being a part of the contents of a medical authority and being the ex parte statements of the author of such work would have been admissible if the above matters had been shown in the bill.

The most serious question in the case is that presented by bystander's Bill of Exception No. 1, which sets out the argument of special prosecution on the trial made to the jury in the following language:

"It has been nearly six and one-half years since Bruce Porter met his death, and no person on earth except the defendant's mother and the defendant's wife has told you that it was an accident."

It is claimed that this was an indirect reference to the appellant's failure to testify. The language is not a direct reference to the appellant's failure to testify and in such case the implication that it was such must be a necessary one before the matter presents reversible error. If it could refer to or rest upon any fact in evidence, the statute is not violated. Howard v. State, 13 S. W. (2nd) 80; Jones v. State, 85 Tex. Crim. Rep. 538; 16 C. J., p. 903, and authorities there cited. The res gestæ statements of accused were placed before the jury to the effect that the shooting was an accident. This was the testimony of his mother. It is shown that immediately before he had met his mother and made this statement he had also met and talked to his father. His father was not used as a witness by him. It is further shown that under circumstances that would have made his statement admissible as res gestæ he talked to the witness Tone Patrick and the substance of his statements to Patrick amounted in effect to a suppression of the fact of the shooting. In the conversation with Patrick happening a few minutes after the shooting, he apparently not only failed to state that it was an accident but misstated the real facts. Appellant spoke at the trial through the mouth of another witness, namely his mother. He failed to speak through the mouths of two other witnesses who might have testified to any declaration in line with his defense for him had he made such. We think it was legitimate argument for the prosecuting attorney to refer to and to argue the unusual character of appellant's statements to witness Patrick and to adduce the inference therefrom that if his defense of accidental shooting had been bona fide, he would have made such a statement to Patrick instead of the one he did make, and that if he had done so, Patrick would have told it for him at his instance at the trial. The implication therefore that the prosecuting attorney was referring to the appellant's failure to testify at the trial is not a necessary one. It could have had for its basis his failure to speak to and through witnesses at a time when his failure to do so was clearly a circumstance against him. He spoke through neither Patrick nor his father, though both met at a time when the transaction was "talking through him." and he told neither the important fact that the shooting was an accident.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

114

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

MORROW, PRESIDING JUDGE.—Adverting to the remarks in the original opinion with reference to the contention of the appellant that the argument quoted therein was an indirect reference to the appellant's failure to testify, the following additional statements from the record are made: Immediately after the deceased was wounded, the appellant with the gun still in his hands, went to the home of his father. Touching that occurrence the appellant introduced the testimony of his mother, from which we take the following quotation:

"The next time I saw Clarence was when he came running up to the house. He was very much excited and was apparently out of breath. He stopped just before he got to us, about as far as to that rail, I guess. He leaned up against some of the plow tools out there; I could not tell you what it was. He had a gun in his hand at that time. The gun there looks like it; I would not know it from any other gun. When he got there he called to his papa and said, 'Papa, Mr. Porter is shot; get a doctor quick.' Mr. Johnson did not stay there then; he said he didn't have enough gas in the car to get to town, and I told him I had some in the house, and he said, 'You all get in and put it in, and I will run down there.' Mr. Wash went running in that direction. I got the gasoline and Clarence and I got the car out and put the gasoline in it and tried to crank it, but we couldn't, and Clarence said to me, 'Mamma, send after Duke to go for the doctor,' and I sent for Duke Cordell to go after the doctor, and we worked with the car until we could get it started. He cranked it until he was out of breath, and then when he got it cranked he went back down home. After I got the gasoline, he and I made some statements; when I went out there with the gasoline I asked him how it happened, and how Mr. Porter got shot, and he said, 'Mamma, I was fooling with the gun and it accidentally went off,' and I asked him how bad he was hurt, and he said he didn't know. That was the same afternoon that Mr. Porter was killed; he told me that when we were putting the gasoline in the car. That was just about the time Mr. Johnson had gone down there, or just shortly

afterward. After we got the car cranked he went off in that direction."

Appellant also introduced an excerpt from the testimony of his sister-in-law, Mrs. Bewley, as follows:

"Wash Johnson came just a short while after I reached the body of Mr. Porter; it was about—, oh, maybe ten minutes, five or ten, something like that, just a very short time."

It is apparent from the record that although the appellant went immediately to his father's home and conversed with him and reported to him that Mr. Porter was shot, no statement was made that the shooting was accidental. At least, the father was not called as a witness to show the making of such remark. The disturbance at the appellant's home attracted the attention of Patrick, and the appellant was asked if anyone was sick there. He replied that "old man Porter was sick, old man Bruce." In reply to the inquiry as to what was the matter with him, the appellant said "he did not know what might be the matter with him; that they had to send for a doctor." The failure of the appellant in the res gestæ statements to his father to refer to the shooting as accidental and his failure to put his father upon the stand are unexplained. In the case of Boone v. State, 90 Tex. Cr. R. 377, it was declared that the statute does not deprive State's counsel, in argument, of making legitimate use of the evidence or the absence of evidence. From that case, which has often been followed, we take the following additional statement:

"The statute is not shown to have been infringed, however, by disclosing that counsel, in argument, used language which might be construed as an implied or indirect allusion to the failure of the accused to testify. To come within the prohibition the implication must be a necessary one, that is, one that cannot reasonably be applied to the failure of the accused to produce . . . other evidence, to which remarks may reasonably have been applied by the jury, the statute is not transgressed."

Considering the facts just mentioned, in connection with Patrick's testimony, it would seem that the appellant's silence on the trial was not *necessarily* the subject-matter of the remarks of counsel upon which the complaint is made. Application of the remarks apparently might have been made by the jury to the silence of the appellant with reference to the accidental shooting when the report was made to his father, the delay which occurred before it was made to his mother, to the fact that his father was not used as a witness, or to the fact

that his declarations to Patrick were apparently inconsistent with the theory of the accidental shooting of the deceased.

The motion is overruled.

*Overruled.*

## ON APPELLANT'S REQUEST FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

MARTIN, JUDGE.—It is contended by appellant that the opinion on the original hearing and on motion for rehearing deny him the right to remain silent, which is guaranteed him by our Constitution. It is also claimed that these opinions are in conflict with a prior decision in this same case, reported in 272 S. W. 783. While accused had the right to remain silent in this case, he didn't exercise that right. He talked, and did so under circumstances and at a time and place which made his conversations admissible as res gestæ and part of these conversations were admitted as res gestæ. In two of these conversations he failed to disclose the important fact that the shooting was an accident. The matters referred to in our former opinion, reported in 272 S. W. 783, were not of this character. The attorney mentioned in the original opinion referred directly to one witness who testified to res gestæ statements and what we said was intended to go no further than to hold that his language was not a necessary reference to the appellant's failure to testify, but may have referred to his failure to produce through the mouth of two other witnesses what he did through the mouth of one, namely his mother, who testified that he told her it was an accident. That a comment on the failure of the accused to produce evidence is not a reference to his failure to testify has been many times held. Jackson v. State, 31 Tex. Crim. Rep. 342; Wooten v. State, 50 Tex. Crim. Rep. 151; Branch's P. C., Sec. 373.

Motion denied.

*Motion denied.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.