HAROLD RYLEE v. THE STATE.

No. 19375. Delivered April 13, 1938.
Rehearing denied June 8, 1938.

The opinion states the case.

*J. A. Johnson,* of Stephenville, *J. R. Creighton,* of Mineral Wells, and *Herman Jones,* of Austin, for appellant.

*Ernest Belcher,* District Attorney, and *Chandler & Chandler,* all of Stephenville, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The appellant was convicted of murder with malice, and awarded a penalty of twenty-three years in the penitentiary.

The trial was vigorously contested, and we find thirty-three bills of exception in the record. The most important ones we will attempt to notice.

It seems that appellant and his wife, Helen, kept a store of some kind in the town of Granbury in Hood County, at which place the tragedy occurred, the venue of this cause having been transferred from such county to Erath County. On August 27, 1934, the deceased T. C. Mitchell, in company with his cousin Dalton Mitchell, and Mr. and Mrs. Burns, made three trips to appellant's store for the purpose of purchasing and drinking some beer. It was Mrs. Helen Rylee's contention that at each one of these trips the deceased insulted her, and on the first trip that he attempted to pull her over from behind the counter, and asked her for a date; that on another of these trips the deceased attempted to approach her and she produced a pistol and ordered him out of the house, and told him not to return; that on some of the trips the deceased failed to pay for the drinks that she had served to him and his companions. That on the final trip the deceased came into the store by himself; that just previous to this last trip she had told her husband, who was then in company with one Van Zant, about the deceased's conduct as above outlined. When the deceased came back the last time her husband was in the back of the store, and she was behind the counter, and when she saw the deceased she said: "I thought I told you not to come back to my place any more," and he said: "I do as I G— d— please in Hood County," and started coming towards her, and she pulled the gun on him, and about that time her husband came out and took hold of the gun, and the gun went off, and she must have fainted.

The State's theory and proof showed that Dalton Mitchell and deceased drove up to the appellant's store the last time, and appellant was in the door, and the deceased asked Mr. Rylee if he had any liquor, who answered "Yes, but I do not know whether it is your flavor or not," and deceased walked in the store, and Harold Rylee walked behind the counter and came out with a pistol and started shooting, and T. C. Mitchell whirled to the right and fell on the floor. He was shot three times, and seemed to have died there immediately.

Appellant complains in his first bill of exceptions of the overruling of his second motion for a continuance on account of the absence of the witnesses Mr. and Mrs. R. L. Boston who had

been subpoenaed on January 16, 1937, and who were absent upon a trial had of this cause on said date. There are no affidavits attached to said motion, and appellant relied for his diligence upon the subpoena issued at the former trial of this cause in January, 1937, no further subpoena having been issued for the term of court at which this cause was finally tried. It is shown that such witnesses failed to appear in January, both claiming to be under some kind of treatment; and it also appears from the bill that appellant relied upon such subpoena to compel their attendance at the second trial. Such action evidences a lack of diligence. We quote from Johnson v. State, 252 S. W. 555: "The burden is on the appellant to establish the exercise of diligence in support of an application for a continuance. See Branch's P. C., Section 314, p. 186, for authorities. The diligence is not sufficient if only a subpoena was applied for when the law authorized an attachment. The court was justified in refusing the continuance."

These witnesses having theretofore disobeyed a subpoena, appellant was entitled to have an attachment issued for them. This he did not do, but relied entirely upon a subpoena issued six months before to compel their attendance at this trial. He was not diligent, and his bill is overruled.

Bill of exceptions No. 3 relates to the court's charge, which seems to be functus officio, as we note that the matter complained of as having been omitted from such charge was eventually incorporated therein.

Bill No. 4 is also a complaint of the court's charge that is without merit. The court charged as therein suggested and allowed the appellant to defend against apparent danger not only to himself, but also to Helen Rylee, as viewed from appellant's standpoint.

Bill No. 5 is without merit, it being a complaint of the careful trial court's charge which is not borne out by the text thereof, and to the same charge bill No. 6 offers the objection because of the charge on malice aforethought. In our opinion such charge was justified by the facts, and was correctly embodied in the main charge.

Bill No. 7 complains because the witness Dalton Mitchell was permitted to testify that he in company with the deceased and Mr. and Mrs. Burns went into appellant's place of business and drank some beer. Testimony of the three trips made into appellant's place of business by the deceased before he was killed was a part of the transaction, and was testified to by appellant's wife, and her version thereof was sharply controverted

by some of the State's witnesses, and we can see no error in admitting this version of the transaction, a portion of which, according to the witness Mrs. Rylee, constituted one of the reasons for this killing. Another reason therefor seems to be that it was appellant's contention that the deceased had seen a slot machine operator pay Mrs. Rylee $30, her part of such machine's earnings, and that deceased and his cousin, Dalton, were there in such place of business planning to rob their store, and the complained of question showed that the deceased, his cousin and Mr. and Mrs. Burns were "sitting there drinking beer," thus perhaps anticipating one of appellant's defenses. We think no error is reflected in such ruling.

Bill No. 13 complains of a cross-examination of Mrs. Helen Rylee relative to the date of her marriage to appellant. It will be noted that immediately after the witness gave her name, and stated that she was the wife of the appellant, the appellant's attorneys introduced in evidence a marriage certificate of date January 21, 1932, and signed by O. J. Moss, which certificate did not show to have been filed in the office of the clerk of the county in which it was issued. While cross-examining the witness relative thereto, she was asked if at the former trial of this case she did not testify that she was married to appellant in March, 1929. The bill does not show what her answer thereto would have been, but bill No. 14 shows that she would have answered "Yes, we were married in 1929," but that such 1929 marriage certificate was lost, and, on account of taking a trip to Canada, and it was necessary to have a marriage license with them, that she and appellant were remarried in Conway, Arkansas. Bill No. 15 is as to further particulars of such two marriages; and an examination as to where such marriages occurred and from whom such licenses were purchased. The witness said she was present when the first license was purchased from the county clerk in Fort Smith, Arkansas, in 1929, and they were married by the justice of the peace in Fort Smith, Arkansas. She then stated that such license was lost, and later in 1932 she was again married by a justice of the peace in Conway, Arkansas. The court in his qualification of all the above grouped bills sets out the testimony in full of Mrs. Rylee, and further the testimony of the witness Jerry Bell, county clerk of Sebastian County, Arkansas, the county in which Fort Smith is located, whose duties seem to be about the same as county clerks of Texas, who testified that he was keeper of the records of the issuance of all marriage licenses, and that he had made search of all his records, and that there was no record of an issuance of a marriage license to appellant and Helen

Johnson, Mrs. Rylee's maiden name, and that there was no record of a return of any such license; the further testimony is contained in such qualification of a handwriting expert, who gave the opinion that the writing on such introduced marriage license was of a more recent date than the year 1932, its purported date. The appellant introduced this certificate, and offered as one of the causes of this killing insults to his wife, through his wife's testimony, and it seems to us that under the peculiar circumstances shown by her own testimony, that such matter was a legitimate matter for cross-examination. It is also observed that on a previous trial this lady had fixed the date of her marriage as the year 1929. In Brown v. State, 136 S. W. 265, this Court said:

"A wife called to testify in behalf of her husband is subject to cross-examination like any other witness, limited only that the cross-examination must be confined to the matters testified to by her in direct examination. Johnson v. State, 28 Texas App. 17, 11 S. W. 667; Jones v. State, 38 Texas Crim. Rep. 87, 40 S. W. 807, 41 S. W. 638, 70 Am. St. Rep. 719; Merritt v. State, 39 Texas Crim. Rep. 70, 45 S. W. 21. And in Hampton v. State, 45 Texas 154, it is held that, where the wife is called to testify in behalf of her husband, the prosecution has the right to cross-examine her touching her testimony on a former trial or examination of the same case."

See, also, Bell v. State, 224 S. W. 1108. We see no reversible error in the above grouped bills.

Bill of exceptions No. 19 relates to laying a predicate from the witness Mrs. Rylee while she was on the stand, as follows: The witness testified as to the actual shooting of the deceased, that the deceased "started towards me and I pulled the gun on him, and about that time my husband came out and took hold of the gun, and the gun went off." The court charged the jury, among other things, that if Mrs. Rylee shot the deceased, to acquit the appellant. The lady was then asked if on the same night and after the deceased was killed if she did not say to Donald Parker, in substance, these words: "Poor little old Harold killed a man awhile ago, and I don't know who he is." It seems to us that this testimony was contradictory of much of the testimony that she gave in her examination in chief, and was a legitimate cross-examination thereof, especially as to whether she did the shooting or not. The court qualifies this bill in its approval of bill No. 28, which is as to the admission of the testimony of Donald Parker, who was allowed to testify that Mrs. Rylee did make such above quoted statement at such

time and place to the witness. The court's qualification says that such statement was supposed to have been made in a few minutes after the tragedy, and was admitted on the grounds that the killing was either done by Mrs. Rylee, or that the gun was accidentally discharged as shown by her evidence. We held in Victery v. State, 29 S. W. (2d) 787:

"Any conversation, however, happening between the wife and another after the killing which directly contradicted her defensive testimony is regarded as germane and may be gone into. Marsh v. State, 54 Texas Crim. Rep. 144, 112 S. W. 320; Johnson v. State, 24 S. W. (2d) 825." See also Cochran v. State, 16 S. W. (2d) 1065.

We see no error in either the laying of the predicate, nor in allowing the witness Parker to testify relative thereto.

Bill of exceptions No. 18 is ruled by what we have said in relation to bill No. 7, and as reflected by the bill we see no error therein.

Bill of exceptions No. 20 reflects matters that were proper, so we think, relative to appellant's defense of insults to his wife, and were offered in contradiction of her testimony relative to such insults. See Claxton v. State, 288 S. W. 444, which holds:

"It is competent to introduce evidence leading to the conclusion that the evidence of the alleged insult was a fabrication, or that the appellant's version of it was exaggerated," citing authorities.

Bill No. 21 was as to the friendly attitude of Mrs. Rylee with the deceased and his party, after she claimed the insulting words and actions had occurred, in that, over appellant's objection, it was shown that when the deceased paid for the drinks consumed by his party, Mrs. Rylee asked him to come back. What we have heretofore said relative to bill No. 20 is applicable here, and we see no error reflected therein.

Bill No. 22 has been considered and we see no error therein, having heretofore written herein on a similar matter in considering other bills, and to the same effect is bill No. 23, and our ruling thereon is the same; also bill No. 24 as well as bill No. 29. All of the last named bills are, in substance, to the effect of the State's witnesses being allowed to testify that on each of the three occasions wherein the deceased and his companions came into appellant's store that they purchased some beer, and sat at a table and drank it, and that the deceased approached Mrs. Rylee, who had served them, and paid her for the beer,

and she invited them to return. That there were no insults, no ordering of the deceased out of the house, and that these drinks were paid for. All of this testimony was in contradiction of Mrs. Rylee's testimony, and not objectionable, so we think, although such was urged so to be by appellant because it indicated a sale of beer in violation of the law. We also think that all the actions of the deceased and his companions while in this store were further admissible, having in view one of appellant's defenses relative to an attempt to rob him by deceased and Dalton Mitchell at the time of the killing.

Bill No. 30 is governed by what we said relative to bill No. 15, as is also bill No. 33. Many of these bills are claimed to reflect objectionable matters because they incidentally show that Mrs. Rylee was violating the law in that she was selling beer in a dry area at appellant's store. In this connection we note that nowhere in this record is it shown that it was a violation of the law to sell beer in the locality where the appellant and this lady were operating their store. We do know judicially that it is lawful to thus sell beer in this State, except in certain localities, which excepted localities are always a matter of proof in this Court. As to the matter of drinks being served, this matter was testified to by Mrs. Rylee, she claiming in some instances the failure to pay for same, and the fact that some of the witnesses testify that these drinks were beer, and such not denied by Mrs. Rylee was but an incidental matter, and not subject to the interpretation of grave injury placed thereon by appellant's attorneys. It was a part of the transactions in which it was claimed the deceased forfeited his right to live, and seems to us to have been properly admitted.

The trial court gleaned from the testimony that appellant had five major defenses to this killing: (1) That Mrs. Rylee accidentally shot the deceased; (2) that Mrs. Rylee shot the deceased in defense of herself and an unlawful attack upon her; (3) that appellant shot deceased because of insulting words and conduct towards his wife; (4) that appellant shot deceased because he was attempting to rob appellant, and (5) that appellant shot deceased in defense of his wife.

The court carefully charged on all these phases of the testimony, and correctly so, we think. We have carefully reviewed all the bills of exception presented, and we find no error therein, and this judgment is therefore affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—The motion for rehearing is concerned with appellant's objection to testimony elicited by the State to the effect that he and his alleged wife had not married in the State of Arkansas in 1929. The conclusion expressed in the original opinion appears to be supported by the holding in Austin v. State, 254 S. W. 795. We pretermit further discussion of the question.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.