CLARENCE JOHNSON V. THE STATE.

No. 8511.    Decided June 4, 1924.

Rehearing denied June 27, 1924.

1.—Murder—Accidental Killing—Other Transactions—Evidence.

Where, upon trial of murder, the defense claimed accidental killing and the State claimed malice, it was reversible error to admit in evidence the facts about another transaction or offense, and to permit a State's witness to testify that after the marriage of appellant and her sister witness had spent the night at their home on October 6, prior to the killing, and that during the night appellant had come to her bed and undertook to raise her night clothes, etc., although she had never communicated this matter to anyone, and although appellant and his wife specifically denied that any such assault as testified to had ever occurred, and although the deceased had never had the slightest idea of any such occurrence. Following: Gardner v. State, 11 Texas Crim. App., 265.

2.—Same—Accidental Killing—Other Transactions.

Upon trial of murder, under the facts of the instant case, the jury should have been permitted to pass upon appellant's defense of an accidental killing free from the prejudice which was naturally aroused by the statement of defendant's sister-in-law, and the judgment must be reversed and the cause remanded.

3.—Same—Impeaching Witness—Practice in Trial Court—Evidence.

Where, upon trial of murder, the defendant's father was called as a witness to testify for the defendant, and said that his son appeared at the witness' house apparently exhausted and in a much distressed state of mind,

and said to witness, "Papa, Mr. Porter is shot and get the doctor,"; testimony that this witness of the defendant after the shooting told another State's witness, "Well, to tell you the truth, Miss Lizzie, he (deceased) and Clarence (defendant) had some trouble and Clarence shot him," which defendant's witness denied having made, is reversible error.

4.—Same—Impeaching Witness—Opinion of Witness.

Under the guise of impeaching evidence, it is improper to get before the jury a statement which reflects only the opinion of the witness sought to be impeached where the statement is clearly hearsay in character. Following: Drake v. State, 29 Texas Crim. App., 265, and other cases.

5.—Same—Rehearing—Practice on Appeal.

An examination of the State's motion for rehearing, and the authorities cited therein leaves us of the opinion that on the original hearing a proper disposition of the case was made, and the motion is overruled.

Appeal from the District Court of McLennan. Tried below before the Honorable Richard I. Munroe.

Appeal from a conviction of murder; penalty, sixty years imprisonment in the penitentiary.

The opinion states the case.

*Price & Miller*, for appellant.—On question of other transactions and uncommunicated facts: State v. Williams, 26 S. W. Rep., 339; Phillips v. State, 22 Texas Crim. App., 139; Gardner v. State, 11 Texas Crim. App., 265.

On question of hearsay testimony: Drake v. State, 49 Texas Crim. App., 265.

*Tom Garrard*, Attorney for the State and *Grover C. Morris*, Assistant Attorney for the State.

HAWKINS, JUDGE.—Conviction is for murder, punishment being assessed at confinement in the penitentiary for sixty years.

Appellant was indicted for the murder of his father-in-law, Bruce Porter. A number of questions are brought forward for review, but the Honorable State's Attorney has confessed error relative to two of the matters thus presented, and they only will be discussed. In order that they may be properly understood the following condensed statement of the facts is here incorporated.

Appellant's father (Wash Johnson) and deceased were old and respected citizens of McLennan County, living on adjoining farms. Appellant had been married to the daughter of deceased about a year at the time of the killing. He was living upon and renting from deceased a part of his farm, appellant's house being three or four hundred yards from that occupied by deceased, and about the same distance from the home of appellant's father. The killing occurred on the 28th of November, 1922, late in the afternoon. The first informa-

tion of the occurrence was conveyed to Wash Johnson by appellant when he appeared at his father's home apparently in an exhausted and excited condition and reported to his father that Mr. Porter was shot, with a request that a physician be obtained. Mr. Johnson, Sr., made no inquiry as to the manner of the shooting, but immediately went to the home of deceased, leaving directions for appellant to get the automobile and secure a physician. According to appellant's mother she saw him as he approached the house running, heard the statement made to her husband, aided appellant in putting some gasoline in the car and trying to get it started. During the time they were putting gasoline in the tank she says appellant told her the shooting was an accident. No one was present at the home of appellant at the time of the homicide save he and his wife, both of whom testified that the killing was accidental. The State undertook to refute this by proof of circumstances which do not appear as cogent to us as they seem to have been to the jury, unless the testimony confessed by the State to have been erroneously admitted was appropriated much to the injury of appellant.

Over objection Mrs. Bewley (formerly Miss Porter) was permitted to testify that after the marriage of appellant and her sister witness had spent the night at their home on October 6th; that during the night appellant had come to her bed and undertook to raise her night clothes; that upon witness giving an alarm appellant's wife remonstrated with him about his conduct, and that witness at the time told appellant she intended to report the matter to her father; that in fact she never did so because she did not want to cause trouble, and that she never told anybody about it until after the killing. The objections urged to the receipt of this testimony were, first, that if the assault in fact occurred it had not been communicated to deceased, and therefore furnished no motive for a difficulty between him and appellant; second, because the facts in the case would show that the conduct of deceased towards appellant was such as to put appellant upon notice that if such assault had in fact ever occurred it had never been reported to deceased; third, because it was an effort on the part of the State to stigmatize appellant by showing an alleged criminal act on his part; fourth, because it was not necessary for the State to rely upon circumstantial evidence to connect appellant with the killing of deceased. Appellant and his wife specifically denied that any such assault as that testified by Mrs. Bewley occurred. Mr. Branch in his valuable Ann. P. C. at page 1046, under Section 1882, deduces from numerous authorities collated the following propositions:

First: "Proof of an extraneous crime or disconnected transaction should not be admitted to show motive unless there is some logical connection between it and the particular act under investigation."

Second: "The testimony of extraneous and disconnected matters which could only prejudice the jury against defendant is not admissible when the homicide is not shown to have grown out of any circumstance connected with such matters."

Third: "When the acts or declarations proposed to be proven to show a motive for the commission of the alleged offense for which defendant is on trial are so remote as not to afford a fair inference for the existence of a motive to commit the act under investigation, proof of same should be rejected."

Discussing the testimony pertinent to the foregoing propositions, we find nothing in the record to indicate that the relations existing between deceased and appellant had been anything but friendly. The evidence shows without dispute that they worked in the same field and saw each other daily; that a few days after the alleged assault upon Mrs. Bewley appellant and his wife spent several days and nights at deceased's home; that deceased had visited at the home of appellant a number of times between October 6th and the date of the homicide. There is nothing in the record to indicate that if the assault upon Mrs. Bewley in fact occurred she had ever carried out her threat to report the matter to her father or intended to do so, but on the contrary the positive evidence is all the other way. The testimony of appellant and his wife is to the effect that a short time before deceased came to their house on the occasion of the killing appellant had picked up a gun and started working with it in some way when his wife called him to cut some wood; that he laid the gun on the table and went to get the wood; that as appellant returned to the house with the wood he was joined by deceased and they came in the house together; that deceased had his daughter put on a new hat she had bought that afternoon and some friendly conversation occurred relative to it; that when deceased started to leave appellant again picked up the gun and began to work with it; that as deceased went out the door his daughter made some inquiry relative to her mother and just as deceased turned to reply to the question the gun was accidentally discharged, causing the wound which resulted in his death. The only theories we can conceive upon which the State could have contended the evidence given by Mrs. Bewley to have been admissible was either that the facts of the alleged assault had been communicated to deceased, or that appellant feared they would be communicated to him at some future time. The first contingency seems to be entirely removed. There was nothing whatever in the conduct of deceased towards appellant, as reflected from this record, that would indicate deceased had the slightest idea of any such occurrence having taken place as that claimed by Mrs. Bewley.

The other contingency, that is, that appellant may have feared she would communicate it to her father later, appears so remote and unreasonable under the facts of this case as to be entirely untenable

as a probable motive for the killing. If such an assault occurred, and she made the threat to report it to her father, the natural and ordinary thing to have done would have been to make the report at the earliest opportunity. This was the next morning when she returned home. Appellant knew from the continued friendly relations between him and his father-in-law that no such report had been made by Mrs. Bewley at that time nor for a month thereafter. The facts in Gardner's case, 11 Texas Crim. App., 265, are very similar in some respects to those now before us, with the exception that the alleged improper conduct of the defendant in that case occurred only a short time before the killing. Over the objection of defendant the State was there permitted to prove that the defendant had made improper advances to deceased's wife on the same night of, but prior to, the killing. They were made in the absence of deceased and were never communicated to him. The evidence did not show or tend to show that deceased suspected anything was wrong in regard to that matter. Under the facts of that case it was held that such evidence threw no light upon the motive for the killing and was not calculated to explain the conduct of defendant, he being fully aware that deceased was not informed of his conduct. Judge Hurt in holding the reception of such evidence to have been erroneous used the following language:

"There could have been but one effect produced by this evidence, and that was to seriously prejudice defendant with the jury. He stood before them in a bad light; indeed in the light of a wretch who had not only attempted to destroy the conjugal happiness of deceased, but had finally, in the presence of his wife, taken his life. This evidence, we think, was not only irrelevant, but was calculated to arouse the jury to such a degree of contempt for, and indignation towards defendant, as would render them incapable of considering in an impartial light his defense, although it may have been a legal one."

The foregoing language seems to be peculiarly applicable to the present case as we understand it. The jury should have been permitted to pass upon appellant's defense of an accidental killing free from the prejudice which was naturally aroused by the statement of Mrs. Bewley which was bound to have placed appellant in an unfavorable light, and which, if true, showed a lustful assault upon his sister-in-law.

The other matter upon which the State's Attorney has confessed error arose in the following manner; Wash Johnson, being called as a witness by appellant testified that his son appeared at witness' house apparently exhausted and in a much distressed state of mind, and said to witness, "Papa, Mr. Porter is shot, and get the doctor." No other statement made then or later by appellant to his father was proven or attempted to be proven by the defense. On cross-examination the State elicited from the witness that his son remained at his house the night of the killing, and the next morning told witness

the shooting was accidental. In response to further questions by the State witness said that on the night of the shooting, and after Mr. Porter had died, witness went to Mr. Aiken's house to phone for an officer. He was then asked by State's counsel if in reply to a question from Mr. Aiken as to the cause of Mr. Porter's death witness did not reply in the presence of Mr. and Mrs. Aiken, "Well, to tell you the truth, Miss Lizzie, he and Clarence had some trouble, and Clarence shot him." Johnson denied making any such statement. Later Mr. Aiken, over appellant's objection was permitted to testify that Mr. Johnson had made such statement, the learned trial judge admitting it for the purpose of impeaching Johnson and limiting it to that purpose in his charge. The objections urged were that the witness Johnson was not present at the time of the killing, knew nothing about it or the cause of it, that the statement attributed to him by Aiken was the expression of an opinion, and purely hearsay. This testimony ought to have been excluded. Under the guise of impeaching evidence it is improper to get before the jury a statement which reflects only the opinion of the witness sought to be impeached, where an opinion would be inadmissible or where the statement is clearly hearsay in character. The father of appellant was not present when the homicide occurred, and if any trouble arose then between deceased and appellant, or if any existed prior thereto, it is not shown by the evidence, save only in the statement attributed to the father by the witness Aiken. This evidence is practically the same as that held to have been erroneously received in Drake v. State, 29 Texas Crim. App., 265 and in Jones v. State, 89 Texas Crim. Rep., 577, 232 S. W. 847. See also Sec. 175 Branch's Ann. P. C. and cases there collated. Again, if the State had sought to prove by Wash Johnson that appellant said he and deceased had trouble and that he (appellant) had shot deceased on that account, and had failed in its effort to elicit such evidence, it would scarcely be contended that under the guise of impeaching Wash Johnson the State could have supplied the missing evidence by proving by another witness that Wash Johnson had told him that appellant did make such statement,— (Vaden v. State, 25 S. W., 777; Bryan v. State, 90 Texas Crim. Rep., 175, 234 S. W., 83, and authorities therein cited; Ross v. State, 45 S. W., 808; Katz v. State, 92 Texas Crim. Rep., 629, 245 S. W., 242), yet this is exactly the effect of the evidence admitted. Although there was no testimony before the jury that appellant had made any such statement to his father, the jury would naturally draw the conclusion that he had done so from Aiken's evidence, although the purported conversation between Mrs. Aiken and Wash Johnson was in appellant's absence, and at a time when Johnson did not himself claim to know any facts relative to the shooting save the bare statement appellant made that "Mr. Porter was shot, and get a doctor." Aiken's evidence came within the rule

of both objectionable opinion and hearsay testimony, and was hurtful to appellant.

The case should be reversed for both errors discussed.

It is so ordered, and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

June 27, 1924.

MORROW, PRESIDING JUDGE.—An examination of the State's motion for rehearing and the authorities cited therein, leaves us of the opinion that on the original hearing a proper disposition was made of the appeal.

The motion is overruled.

*Overruled.*