Henry Joe JERNIGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 57634.

Court of Criminal Appeals of Texas, Panel No. 2.

June 6, 1979.

Rehearing En Banc Denied Sept. 19, 1979.

William F. Alexander, George Street, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, L. S. Eubanks, Jr. and C. Wayne Huff, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder. V.T.C.A. Penal Code, Sec. 19.02. Punishment was assessed by the jury at 18 years.

Appellant contends that the trial court erred in admitting evidence of an extramarital affair of his wife as proof of appellant's motive to kill her. Appellant maintains that the State failed to prove that he had knowledge of the actions of the deceased shown by this evidence. A review of the evidence is necessary to the disposition of this contention.

Appellant had picked his wife up from work on the day of her death. After first taking a co-worker home, appellant and his wife arrived at their apartment at about 4:30 p. m. The manager of the apartment saw the appellant leave his apartment and go to the mail box, but did not see him return. The manager's wife saw appellant return to the apartment and then leave again. When appellant left the second time she heard him call back into the apartment, "I'll be back in just a minute." She stated that this occurred at 4:50 or 4:55.

Gregory Smith, appellant's employer, testified that he called the apartment between 5:00 and 5:15 p. m. that same afternoon. Appellant's wife answered the phone, and then Smith spoke to the appellant.

Kay Wilson, appellant's niece, testified that she received a call from the appellant between 5:00 and 5:05 p. m. He asked her to go shopping with him and the deceased in 45 minutes. She agreed, but later changed her mind. She called appellant's apartment five minutes after receiving the first call, but the phone was not answered.

Shirley Kierig, a medical receptionist, testified that the appellant arrived at her office for a doctor's appointment at 5:15 p. m.

Lawrence Garris testified that appellant entered his convenience store at 5:20 p. m. and purchased a soft drink. Appellant then went to Kay Wilson's apartment to pick her up.

Wilson and appellant returned to his apartment at 6:00 p. m. Wilson discovered appellant's wife strangled to death in a bedroom.

The deceased had been strangled with an electrical extension cord. Although her blouse had been removed and bra torn, there were no indications that she had been raped. Further, no items were missing from the apartment and there were no signs of forced entry. There was no physical evidence linking the appellant to the death.

Although appellant did not testify at trial, a statement he made to the police soon after the murder was entered into evidence. In this statement appellant stated that the deceased was alive when he left the apartment. He further detailed his activities on the afternoon in question.

■ The State sought to introduce testimony of a relationship between the deceased and a co-worker, David Taylor. Appellant objected to this testimony on the grounds that it had not been shown that the appellant had knowledge of the relationship. The trial court first sustained the objection, but ultimately allowed the prosecutor to question the witness regarding the relationship. The trial court allowed the prosecutor to proceed when he stated that he could show the defendant's knowledge through another witness. Appellant noted his exception to this change in the court's ruling.[1]

---

1. The State maintains that this ground of error was not properly preserved for our review.

The record reflects that when the State first asked Taylor about his relationship with the

Taylor testified that he began going out with the deceased in January, 1975. This relationship continued in the succeeding months. According to Taylor, on the Saturday night before the Monday murder he had been out with the deceased until 5:00 a. m. They had been parked near a lake, where they had "made out." He further related that he had written letters or sent cards to the deceased on some five or six occasions. He denied ever having intercourse with the deceased.

The State maintains that testimony from two witnesses established that the appellant knew of the relationship.

Pat Fincher, the deceased's aunt, testified regarding a conversation between the appellant and the deceased in her presence. This conversation occurred some 10 days before the murder. Fincher testified that:

"Q. What happened then?

"A. I made a laughing comment about it at that time, about him, quote, dialing his finger off, and Joe had just come back in the door from taking another load to the car and Joe walked up to us and asked who were we talking about and Sissy said David and then she said, 'See, you didn't believe me when I told you that Joe knew that Dave was calling me.' And then Joe said 'Well, Dave, he's a good ol' boy, but if I ever find out that they're doing

anything besides talking, zap, that's it.'

"Q. Did he make any gestures with his hands?

"A. A wringing motion."

She further testified to other threats made by the appellant against the deceased if he ever caught the deceased "running around on him."

Miki Jo Howard, a dancer at a night club, testified that she had known the appellant for approximately three years. She stated that he would come into the club to talk with her, and sometimes came to her home. She testified that the appellant had never told her that he suspected that his wife was seeing another man. She stated that Danny Tidwell had told her that the appellant suspected that the deceased was involved with another man. According to her, these suspicions were "from some letters."

Danny Tidwell, a friend of the appellant, testified at trial. He was not questioned regarding the appellant's knowledge of his [appellant's] wife's extramarital relationships.

The State also contends that appellant first "opened up the area concerning the extramarital affairs of the deceased." The State points to the testimony of the investigating police officer elicited on cross-examination by defense counsel. The officer stated:

---

deceased, appellant interposed the following objection:

"MR. ALEXANDER [defense counsel]: This, Your Honor, we object to. There has been no predicate laid to show that the defendant was present, that he was aware of the situation that he is trying to go into and I suggest that it is inadmissible, it is not relevant. Though this may be a circumstantial evidence case, there is nothing to connect the defendant with that conduct or any responsibility toward the law for the conduct of other people. There is no showing that the defendant knew about the conduct prior to the time of her death."

The trial court allowed the prosecutor to proceed when he stated that he could show the appellant's knowledge through another witness. Appellant noted his exception to this action.

After both sides closed, the appellant made the following motion:

"MR. ALEXANDER: Comes now the defendant in the above entitled and numbered cause and moves the Court to strike the testimony of David Lee Taylor, which has heretofore been objected to and instruct the jury to disregard the testimony of David Lee Taylor as regards his, David Lee Taylor's acts, utterances and declarations outside the presence and knowledge of the defendant for the reason that such acts, utterances and declarations are hearsay as to the defendant and inadmissible.

"Respectfully submitted."

The record does not reflect a ruling on this motion, but no instruction was given.

The actions of defense counsel were sufficient to preserve this ground for appeal.

"Q. Could you tell us how many boy-friends Anita [the deceased] had had during her marriage to Joe Jernigan that you know of?

"A. During the investigation I found at least three."

Appellant maintains that his knowledge of the extramarital relationship must be proven before evidence is admissible to show motive. The State advances no other theory upon which this evidence would be admissible, but instead maintains that appellant's knowledge of the affair was shown by the two witnesses.

We first observe that Taylor's testimony revealed two distinct facts. First, his testimony showed an extramarital affair extending over five months including testimony that Taylor had "gone out" with the deceased and sent letters to the deceased. Second, his testimony showed a specific instance in this relationship, the all-night meeting between Taylor and the deceased preceding the murder by only two days.

■ This Court has long held that evidence of a wife's extramarital relationships is admissible to show a motive to kill only if it is shown that the defendant knew of the relationship. *Phillips v. State,* 22 Tex.App. 139, 2 S.W. 601; *Bradley v. State,* 102 Tex. Cr.R. 41, 277 S.W. 147. *See, Bailey v. State,* Tex.Cr.App., 532 S.W.2d 316, 325 (Dissenting Opinion on Appellant's Motion for Rehearing).

V.T.C.A. Penal Code, Sec. 19.06, provides: "In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

Thus, Sec. 19.06, supra, would allow admission of this evidence if it:

1. shows relevant facts and circumstances surrounding the murder; or

2. shows the previous relationship between the appellant and the deceased; or

3. shows the condition of the mind of the accused at the time of the offense.

The conduct of the deceased prior to her death would be relevant only if a connection between this conduct and her death is shown. The only possible connection between her extramarital affair and her death would be the inference that the affair supplied the motive for her murder. As stated above, there can be no inference of motive from this evidence unless the appellant knew of her relationship with Taylor.

Second, Sec. 19.06, supra, allows a showing of the relationship between the accused and the deceased, not the deceased and third parties. *Jackson v. State,* Tex.Cr. App., 552 S.W.2d 798.

Finally, the evidence of the deceased's relationship with Taylor would affect appellant's state of mind only if he had knowledge of the relationship.

The testimony from Fincher showed only that appellant knew that Taylor had been "calling" the deceased. The appellant's threat to kill the deceased if he ever found that the relationship had gone any further than "talk" falls far short of showing that the appellant knew of the five-month affair and particularly the specific instance on the Saturday preceding the murder.

Howard's testimony likewise falls short of showing knowledge. At best, her testimony shows no more than a suspicion.

■ The evidence is insufficient to show appellant's knowledge of the relationship between Taylor and the deceased. Moreover, even if the evidence were sufficient to support an inference of knowledge of the relationship generally, there is clearly no evidence of knowledge of the specific instance on the Saturday preceding the deceased's death. The admission of this testimony was error.

■ Finally, the State's contention that the appellant elicited testimony that opened

up the area for the State's inquiry is without merit. We are not faced with the situation in which evidence was introduced generally showing the existence of the extra-marital relationship. The State introduced evidence of a specific occurrence a short time before the death. The testimony that she had three boyfriends at some time during the marriage did not entitle the State to show the specific instances that could have been the triggering factor in the murder, nor the particulars of this specific affair.

We hold that admission of Taylor's testimony regarding his relationship with the deceased was reversible error.

The judgment is reversed and the cause remanded.