Homer Lee HODGES, Appellant,

v.

The STATE of Texas, State.

No. 2-82-143-CR.

Court of Appeals of Texas,
Fort Worth.

May 4, 1983.

The Wesbrooks-Yandell Firm, P.C. and Ron L. Yandell, Wichita Falls, for appellant.

Timothy D. Eyssen, Dist. Atty., Wichita Falls, for State.

Before HUGHES, BURDOCK and SPURLOCK, JJ.

OPINION

SPURLOCK, Justice.

Appellant, Homer Lee Hodges, pled not guilty to the offense of murder in Wichita Falls, Texas. The jury found him guilty and assessed his punishment at 30 years in prison.

Hodges complains of five errors committed by the court and complains that there was no evidence to support the jury verdict of guilty.

We reverse and remand.

Hodges' grounds of error assert that the court: (1) admitted evidence of a previous marriage, extramarital affair, and birth of an illegitimate child, which evidence extremely prejudiced his right to a fair trial; (2) failed to properly charge on the law of criminal negligence; (3) refused an instruction on presumption of intoxication (on the part of the deceased); (4) allowed the prosecutor to question defense witnesses on a "had you heard" basis over Hodges' objection; and (5) allowed the prosecutor to state personal opinion and to ask the jury to rely on that opinion, over objection by Hodges.

Hodges' ground of error number six alleges that there was no evidence to enable the jury to conclude beyond a reasonable doubt that he did intentionally cause the death of the deceased, Forester Robertson. We have reviewed the entire statement of facts and find that there is evidence sufficient to support the verdict, but that error was otherwise committed, as alleged in ground of error one, which requires that this case be reversed and remanded.

In order to address the issue of whether there is sufficient evidence to support the conviction, it is necessary to briefly summarize the facts of the case. Neither Hodges nor the State, through its District Attorney of Wichita County, provided a statement of the case. This case involves a serious question of no evidence. This court cautions attorneys appearing before it, that they must, to give the minimum representation to their client, whether it be the State or a convicted individual, make a written, chronological restatement of the salient facts sufficient to enable this court to have a rudimentary understanding of the case. Any less performance falls far short of the requirements of this court, and of V.A.C. C.P. art. 40.09.

A review of the record reveals that Hodges was holding a gun that discharged and caused the death of Forester Robertson on December 19, 1980. This occurred in an apartment under the control of Hodges. Earlier that day, Hodges and the deceased had been together fishing. During some part of that day, they were joined by two younger men, Ronny Joe Looney and Brian Fudge, and were also joined by Jane Sanders (now Mrs. Hodges) who was then Hodges' girlfriend. There was no argument during the earlier part of the day, and some members of the party went to Wichita Lake to run trotlines and to fish. They all wound up at the apartment shared by Hodges and Sanders.

There was nothing to indicate Hodges or the deceased were angry at each other, or that anyone had any difficulty until later in the evening, when the deceased had had a few drinks. The testimony varies as to the number of beers Hodges had, but all witnesses basically agreed the deceased had more to drink than did Hodges.

The first difficulty began when the deceased and Sanders arm wrestled some, and then the deceased wanted to fight the boys. During some of this discussion and some of this arm wrestling, the deceased staggered around a little, he and Sanders fell into a potted plant and some difficulty occurred with one or the other of the boys. Later, while seated at a table, Robertson hit one of the boys. Hodges and Sanders were in another room during most of this time. One of the boys cried some, and as there had been pushing and challenging by the deceased of the two boys, the boys wanted to go home.

The boys reported their desire to leave the apartment, and requested that Hodges take them home. Hodges agreed and sent the boys outside. They believed that Hodges and the deceased were to follow shortly. When neither Hodges nor the deceased showed up in approximately two minutes, Looney went back inside and saw Robertson seated and Hodges standing holding a gun in his right hand, pointing down. At that time Looney saw Sanders walk into the room to stand between the two men, saw her grab them and heard her say to them "Friends don't fight."

Looney testified he grabbed Sanders and walked her to the door and that he was scared. He turned, saw Robertson slap at the hand (arm?, gun?) of Hodges and then the gun was fired. Robertson was hit, fell down, and Hodges backed up and sat down, placing the gun on a bar behind him. Looney called the police, Sanders cried greatly, and Robertson lay on the floor.

Hodges testified he had no quarrel with Robertson, and did not intend to shoot him. He testified he got the pistol from a drawer to carry with him to protect $2,100.00 he had in cash, which he had withdrawn from a bank that day. He testified he felt the need of the pistol for protection for the money as he went to drive the boys to their home. Hodges said that as he got the pistol out of the drawer and turned to leave the apartment, Robertson suddenly lunged at him from the chair in which he was sitting, and that Robertson's hand went out, striking the hand in which Hodges carried the gun, and caused the gun to discharge. Expert testimony by the State revealed that the bullet entered Robertson's left elbow and passed through that area, entering the lower left chest, and moving downward into his lower left abdomen, killing him.

The State produced only three witnesses in its case in chief. Two of these were police officers, who established that the deceased was shot at the apartment of Hodges, and that when they arrived on the scene Hodges said, "I did it."

A doctor testified for the State that the deceased died in Wichita County, and that a gunshot was the cause of his death. All other testimony was consistent with Hodges' testimony of accident, or rather that the actions of the deceased in striking Hodges' hand caused the gun to discharge. The jury found the evidence sufficient beyond a reasonable doubt to convict Hodges of murder.

■ At the time the State rested its case in chief, after presenting only the three witnesses, mentioned above, Hodges moved for a directed verdict. The court denied this motion. We find that the jury could have found the evidence sufficient at that point to have convicted Hodges of the offense of murder, in that the testimony was uncontroverted that at the time the police arrived on the scene Robertson was dying and Hodges admitted shooting him. We find that the State is not required to produce a motive in such a case, and conclude the trial court was correct in denying the motion for a directed verdict. Accordingly, we find that Hodges' ground of error number six is not well taken.

However, we do find that the court did commit error in permitting the introduction of other evidence which was highly inflammatory and prejudicial to the rights of Hodges to a fair trial.

■ After the State rested its case, Hodges took the stand and called other witnesses in his behalf. The trial court permitted the State to inquire of Hodges and his witnesses concerning Hodges' extramarital affair with Sanders, and his subsequent divorce from his first wife, and later about a child of Hodges and Sanders, which apparently was conceived one month out of wedlock. At the time each of these questions was asked, Hodges objected and was overruled by the court. At first the trial

court sustained his objections, but later reversed its ruling. The crux of Hodges' contentions on appeal can be shown by a quotation from the record, beginning with the point where Hodges was being cross-examined by the District Attorney and following the conversations and subsequent rulings by the court, as follows:

Q. When was the divorce filed against you, then? Let's get back to that.

MR. YANDELL: I think Counsel is getting far field. The divorce has no materiality to these proceedings.

THE COURT: Sustained.

MR. EYSSEN: May we approach the bench, please?

(Thereupon, the following proceedings were heard at the bench outside of the hearing of the Jury:)

MR. EYSSEN: I think it's material, and I think the Court and Jury would like to find out he is a married man and living with Jane Sanders, whom he has now brought a child by. I believe that is important to prove motive.

MR. YANDELL: It might be if he shot his wife.

MR. EYSSEN: Well, we don't know what he was doing that day out there. Well, I will worry about that on appeal, if you let me get it in.

MR. YANDELL: It's not material to this cause of action. It has no materiality for the motive of shooting Forester Robertson.

THE COURT: I will overrule the objection.

MR. YANDELL: I think you were correct in your first ruling.

THE COURT: Overrule the objection.

We find that the State never did bring evidence into the trial of the case concerning motive to shoot and to kill Robertson, which supposedly revolved around the illicit relationship with Sanders, then Hodges' girlfriend; nor did the State produce any evidence concerning any motive for the shooting which concerned Hodges' later marriage to Sanders (after Robertson's death); nor was any connection ever shown

how the birth of an illegitimate child could have provided any such motive for the shooting. This child was born in March of 1982, some 15 months after the death of Robertson.

We have noted that the State is not required to show motive in a murder case. *Garcia v. State,* 495 S.W.2d 257 (Tex.Cr. App.1973). We can see no other apparent reason for this complained of testimony to have been admitted other than to inflame the jury and prejudice the rights of Hodges. Hodges' witnesses testified there were no threatening gestures between Hodges and Robertson; nor did either make any threatening statements or ever provoke the other that entire night. The evidence certainly shows that a tragedy occurred, but we find that it is reasonably probable that the jury based their determination that Hodges intentionally and knowingly shot Robertson at least in part upon the prosecutor's improper presentation of Hodges' bad character and past activities, and not solely on the basis of actual evidence of Hodges' apparent intent or "motive".

The complained of testimony concerning Hodges' girlfriend, subsequent divorce, and birth of an illegitimate child, was highly inflammatory, and should not have been admitted in evidence without relation to an essential element of the offense. *See Jernigan v. State,* 585 S.W.2d 701, 704 (Tex.Cr. App.1979); *Johnson v. State,* 98 Tex.Cr.R. 109, 263 S.W. 301 (Tex.Cr.App.1924).

The prosecuting attorney convinced the trial court to admit the evidence at issue by repeatedly making assertions that the evidence sought to be introduced was related to motive. This evidence did not, however, provide any valid basis to infer motive. No witness ever testified the two men argued over the girlfriend, or even about her. At best, the State's cross-examination of two

of Hodges' witnesses indicated the deceased may have hugged the girlfriend, or kissed her, but quit when she asked him to stop. The evidence did not fairly raise an inference of motive and was clearly prejudicial to the rights of the appellant to a fair trial. *See Porter v. State,* 623 S.W.2d 374 (Tex.Cr. App.1981); *Rodriguez v. State,* 486 S.W.2d 355 (Tex.Cr.App.1972).

The actions of the trial court in admitting the evidence complained of and permitting later comment by the prosecutor upon such evidence is error and is reversible, in that there existed a reasonable probability that the evidence contributed to the conviction. *Bass v. State,* 622 S.W.2d 101, 104 (Tex.Cr. App.1981). It is clear from the record as a whole that the conviction and later sentence were based in reasonable probability upon the fact of the highly inflammatory nature of the evidence.

We therefore reverse and remand the conviction.[1]

---

[1] In view of our reversal, it is not necessary to discuss appellant's other grounds of error. We do note, however, that the entire record of the questioning of Hodges' character witnesses by the State at the punishment phase of the trial, taken as a whole, reveals an intention to create in the minds of the jury the impression that Hodges had committed specific acts of wrongdoing in the past. We strongly disapprove of this trial practice, not so much because of the fact that the questions were phrased on a "had you heard" basis, but rather because of the way in which the questions were propounded to the various witnesses in numerous instances in which the prosecuting attorney made what appeared to be specific allegations of Hodges' past wrongdoing.